821 So.2d 652 (2002)
STATE of Louisiana, Appellee
v.
Craig S. JOHNSON, Appellant.
No. 36,014-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*655 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
Craig S. Johnson, In Proper Person.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, J. Thomas Butler, William Edwards, Assistant District Attorneys, for Appellee.
Before NORRIS, CARAWAY and KOSTELKA, JJ.
KOSTELKA, J.
After Craig Johnson ("Johnson") was found guilty as charged of attempted armed robbery, La. R.S. 14:27 and 64, he was adjudicated a fourth felony habitual offender and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He now appeals both his conviction and sentence. We affirm.

FACTS
Shortly before 8:00 a.m. on January 30, 2000, Robert Camden ("Camden"), a part owner of and cashier at Jewella Grocery Store and Deli in Shreveport, Louisiana, was preparing to open the store for business. Two of Camden's employees, Andre Balock ("Balock") and Lydell Volcy ("Volcy"), were also inside the store. Immediately after opening the establishment at 8:05 a.m., Camden turned his back to the door, which was about five feet from him, to place something on a shelf behind the counter. When Camden turned around, he found himself facing a double-barreled shotgun that was held by a man wearing a black ski mask and a jacket.[1] The man mumbled something that Camden did not understand, but he knew the man wanted money. Camden threw up his arms and told the man he would give him what he wanted. Balock observed the incident and *656 heard the masked man demand money from Camden. Volcy also saw the man point a gun at Camden but became frightened and hid behind an ice machine.
As Camden moved away, the masked man began to climb over the counter. When the barrel of the gun pointed away from Camden, he seized the opportunity to attempt to subdue the masked man; he grabbed the end of the shotgun with his left hand, the masked man's shirt with his right hand and pulled him over the counter. A fight between the two individuals ensued. Camden was hit in the head with the shotgun before tackling the man and ramming him into a wall. Both men fell to the ground and struggled with one another.
During the struggle, Camden pulled out the handgun he carried for protection and attempted to shoot the masked man. Because, however, he had not yet cocked the weapon, the handgun failed to fire. As Camden's arm was around the masked man's face, Camden was bitten through the sleeve of his shirt. Ultimately, Camden was able to disarm the masked man and throw the shotgun behind him. After the two separated, Camden picked up his handgun from the floor, chambered a cartridge, and warned the masked man he was going to shoot him. The man came toward Camden, who was approximately fifteen feet away. Camden fired three rounds. After the second round, the man stated that he had been hit. The masked man then attempted to jump across the counter to get to the door. Balock grabbed him, however, and Camden heard the masked man mumble, "Dre, its me." Camden went around the counter, met the man at the door and forced him outside and to the ground. The mask was then removed and Camden, Balock and Volcy recognized the man as Johnson, who is Balock's cousin and the estranged husband of another one of Camden's employees. Volcy also recognized him as a resident of the neighborhood. Volcy called the police who arrived shortly thereafter. As a result of the struggle, Camden suffered cuts, bruises and a bite wound and was transported to a local hospital for treatment. Johnson was transported to Louisiana State Medical Center ("LSUMC") for treatment of the gunshot wound.

DISCUSSION

Sufficiency of the Evidence
In his first assigned error, Johnson argues that the evidence was insufficient to convict him of attempted armed robbery because the state failed to prove he entered the store with the specific intent to commit an armed robbery, i.e., that the state did not exclude the possibility he went to the store for a purpose other than armed robbery.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). State v. Hearold, 603 So.2d 731 (La.1992).
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson and now legislatively embodied within La. C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983).
*657 In order to convict a defendant of attempted armed robbery, the state must prove that the defendant, having the specific intent to commit armed robbery, did or omitted an act for the purpose of and tending directly toward the taking of anything of value belonging to another, from the person of another or in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:27 and 64; State v. Musgrove, 33,977 (La.App.2d Cir.12/15/00), 774 So.2d 1155, writ denied, XXXX-XXXX (La.09/28/01), 798 So.2d 112.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. See, State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975). Specific intent to commit a crime is an element of an attempted offense. La. R.S. 14:27. Hence, a conviction of an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose of and tending directly toward the accomplishing of his object. La. R.S. 14:10, 14:27; State v. Loyd, 35,637 (La. App.2d Cir.02/27/02), 810 So.2d 1214.
After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational fact-trier could have found the state proved beyond a reasonable doubt that Johnson possessed the specific intent to commit an armed robbery by doing an act tending directly toward the taking of anything of value belonging to another while armed with a dangerous weapon. The jury heard three eyewitness accounts of how a masked man ran into Camden's store and pointed a shotgun in the victim's face. After Camden's and Balock's seizure of the intruder, Camden, Balock and Volcy all identified Johnson as the perpetrator of the attempted robbery immediately after the mask was removed from his face. Balock, Johnson's cousin, testified that he heard Johnson demand money from Camden. Of course, it is always the function of the jury to assess the credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). Where a trier of fact has made a rational determination, an appellate court should not disturb it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). This testimony alone is adequate to establish the requisite intent. Moreover, even though the victim did not understand what Johnson told him, he clearly comprehended the intent of the words. The jury could have clearly inferred Johnson's specific intent to commit armed robbery from the circumstances of the transaction and actions of Johnson and rejected as unreasonable any other theory of why Johnson entered the store. We, therefore, reject Johnson's argument.

Challenge for Cause
Johnson next contends that the trial court erred in denying his challenge for cause as to prospective juror Cheri Brittain ("Brittain") due to her alleged inability to be impartial toward violence under La.C.Cr.P. art. 797(2) and her diagnosis of attention deficit hyperactivity disorder ("ADHD") which Johnson urges is a *658 physical infirmity under La.C.Cr.P. arts. 401 and 797(1).
During voir dire, Brittain explained that her husband's cousin and his wife were victims of a crime. They were shot at a store on Linwood Avenue, and came to Brittain's house. The state asked Brittain if she would have any problem serving on a jury where the facts involved a gun and whether she could be impartial to both sides. Brittain responded, "Honestly, no," because she felt it was "stupid" for people to be "going around just shooting people, you know, for the fun of it." The state assured the juror she would not be required to condone shooting for no reason, but then explained that the state had to prove Johnson committed attempted armed robbery. Based upon her past experience, the state asked if Brittain could listen to the evidence, be impartial and abide by what the law says before she would pronounce guilt or innocence. Brittain responded, "yes." The state sought to confirm a second time that Brittain would be able to be impartial in rendering a verdict. Again, Brittain responded in the affirmative.
Upon questioning regarding her ability to patiently listen to the evidence, Brittain indicated that she would not be able to do so because she was a very impatient person. She explained that she had ADHD and took Ritalin, a time-released medication. She stated that there were certain times of the day when she got "real antsy" and repeated that she was by nature a very impatient person. Brittain further explained that she thought the ADHD would affect her ability as a juror because her mind "just wonders (sic) everywhere. And I don'tI can pay attention for just so long, then I get bored." She explained that this is the reason she took medication. When asked if the medication helped her condition, she explained that it was time-released and that she couldn't just take it whenever she wanted. She explained that she took one in the morning and one in the afternoon but that at certain times she got jittery.
When the defense asked Brittain how she felt about being called as a juror, she again expressed concern about being able to concentrate but stated that she would do her best.
Upon further questioning, Brittain indicated that she understood the presumption of innocence and the proper burden of proof and would have no problem applying them. She also indicated that she would not hold it against Johnson if he failed to testify during the trial. When questioned about what part of the newspaper she read first, she said she read it front to back.
The defense challenged Brittain for cause, alleging that she was not impartial and that her ADHD and related medication affected her ability to focus on the evidence. The trial judge denied the challenge, noting that he had observed her during questioning and found her very attentive all afternoon. The trial court also noted that she lacked a doctor's excuse. Thereafter, the defense exercised one of its peremptory challenges to release Brittain from jury service and exercised all twelve peremptory challenges during the jury selection process.
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. State v. Hart, 96-0679 (La.03/07/97), 691 So.2d 651, and cases cited therein.
A trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will be reversed only when a review of the entire voir dire reveals *659 that the court abused its discretion. State v. Ellis, 28,282 (La.App.2d Cir.06/26/96), 677 So.2d 617, writ denied, 96-1991 (La.02/21/97), 688 So.2d 521.
The record before us reflects that Johnson exercised all of his peremptory challenges. Accordingly, the only issue remaining for our evaluation is whether the trial court abused its discretion in refusing to excuse Brittain for cause.

Brittain's Impartiality
Regarding juror impartiality, La.C.Cr.P. art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
. . . .
(4) The juror will not accept the law as given to him by the court;
. . . .
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Ellis, supra. However, the trial judge must grant a cause challenge even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).
We find the record supports the trial court's denial of Johnson's challenge for cause based upon Brittain's alleged partiality. The trial court observed her demeanor and was satisfied that she could be a fair and impartial juror. Although Brittain initially indicated an inability to be impartial due to her experiences with an armed robbery, after further "rehabilitation," Brittain demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Of course, the fact that a potential juror had a prior experience with an armed robbery is not grounds to remove her for cause where the potential juror's responses to voir dire questions from both the state and the defense clearly indicates she would decide the case on the merits. State v. Richardson, 33,272 (La.App.2d Cir.11/01/00), 779 So.2d 771, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1151. Therefore, despite Brittain's answer to the question of whether she could be impartial in spite of her experience regarding her husband's family members having been victims of a crime involving a gun, upon further questioning Brittain exhibited the ability to disregard previous views and make an impartial decision based on the evidence presented at trial. In these circumstances, the denial of the challenge for cause was supported by the record. Therefore, we reject this portion of the claim.

Brittain's Physical Infirmity
The defense also argues that Brittain's ADHD qualifies as a physical infirmity disqualifying her from service as a juror.
*660 La.C.Cr.P. art. 797(1) provides that the state or the defendant may challenge a juror for cause on the ground that the juror lacks a qualification required by law.
Pertinent to a juror's physical and/or mental competency to serve, La.C.Cr.P. art. 401 provides in part:
A. In order to qualify to serve as a juror, a person must:
. . . .
(4) Not be under interdiction or incapable of serving as a juror because of a mental or physical infirmity, provided that no person shall be deemed incompetent solely because of the loss of hearing in any degree.
. . . .
B. Notwithstanding any provision in Subsection A, a person may be challenged for cause on one or more of the following:
(1) A loss of hearing or the existence of any other incapacity which satisfies the court that the challenged person is incapable of performing the duties of a juror in the particular action without prejudice to the substantial rights of the challenging party.
(2) When reasonable doubt exists as to the competency of the prospective juror to serve as provided for in Code of Criminal Procedure Art. 787.
The trial court is vested with great discretion in determining whether a juror suffering from a physical infirmity is competent to serve as a juror. State v. Simpson, 29,538 (La.App.2d Cir.08/20/97), 699 So.2d 477, writ denied, 97-2867 (La.05/08/98), 718 So.2d 425, and cases cited therein. A decision by a trial court that a juror is not so impaired as to make him incompetent to serve as a juror should not be disturbed absent an abuse of discretion. Id.
We likewise find that the record before us supports the trial court's denial of the challenge for cause regarding Brittain's alleged physical incompetency. Although Brittain related that she had ADHD, was taking time-released medication for treatment of the condition and got jittery, antsy and bored at certain times, she indicated her intent to do her best to concentrate during the trial. The trial court's decision to deny the challenge for cause, which was partially grounded upon its observation of Brittain's "very attentive" demeanor during voir dire, was within its great discretion. Certainly, the court remained in a superior position to observe the conduct and actions of the potential juror. The record also reflects that Brittain admitted her ability to read a newspaper front to backan effort requiring obvious attention, concentration and blocks of time. The fact that Brittain failed to submit a doctor's excuse documenting her ADHD was also a valid consideration in the trial court's decision. Based upon these facts, we can discern no error in the trial court's conclusion. Accordingly, we also reject this argument.

Suppression of Statements
In his next assignment of error, Johnson contends that the trial court erred in refusing to suppress two of the three statements made by him while in the hospital because the state failed to prove that he was able to understand and waive his rights due to his medicated state.
The subject statements were given by defendant Johnson to Detective Rod Johnson ("Detective Johnson") on January 30 and 31, 2000 at LSUMC. By pre-trial motion, defendant Johnson sought to have the statements suppressed. Nevertheless, the motion to suppress the statements was heard by the court during the trial. After hearing evidence, the court denied the motion *661 to suppress regarding these two statements.
Although defendant Johnson requests that this court review the admissibility of both statements, the record before us reflects that only the January 30, 2000 statement was actually admitted into evidence. Therefore, it is unnecessary that we address the admissibility of the January 31, 2000 statement.
At the hearing on the motion to suppress, Detective Johnson testified that when he arrived at the emergency room on January 30, 2000, at approximately 10:35 a.m., defendant Johnson was in a bed and Officer Jimmy Ivy ("Ivy") was standing beside him. Ivy indicated to Detective Johnson that defendant Johnson wanted to talk to him. Before speaking to him and in the presence of Ivy, Detective Johnson advised defendant Johnson of his Miranda rights, but no "rights card" was signed. Defendant Johnson indicated that he understood and waived those rights. Detective Johnson testified that no threats, inducements or promises were made prior to or during the statement. Although Detective Johnson was aware that defendant Johnson had a gunshot wound to his leg, he testified that defendant Johnson did not appear to be in any sort of pain at the time of this interview, nor did he have any mental or intellectual deficiency. Detective Johnson testified that he had on previous occasions declined to interview a defendant who was under the influence of medication or drugs. Defendant Johnson then gave a statement, naming two other suspects and describing the crime.
Ivy was present during the entire statement and corroborated Detective Johnson's testimony at the hearing on the motion to suppress.
Defendant Johnson testified at the hearing and denied that he ever told Ivy he wanted to speak to Detective Johnson. Rather, he remembered that Ivy told him Detective Johnson wanted to talk to him. It was Detective Johnson who came over and asked him what happened. Defendant Johnson denied that Detective Johnson read him the Miranda rights and testified that Ivy and Detective Johnson were lying. Although defendant Johnson did not know whether he had been given any sort of medicine, he knew the attendants had been working on him and his pain was going away. He also testified that he had an intravenous line in his arm. He remembered the interview "vaguely" because his pain was leaving. The trial court declined to suppress the January 30, 2000 statement.
The purpose of a suppression hearing is to determine if evidence should be presented at trial. State v. Goodman, 99-2352 (La.App. 4th Cir.10/13/99), 746 So.2d 693. In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La. App.2d Cir.04/07/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.05/11/01), 791 So.2d 1288. Before the state can introduce an inculpatory statement made in police custody, it bears the heavy burden of establishing that the defendant received Miranda warnings and that the statement was freely and voluntarily made and not the product of promises, threats, or duress. La.C.Cr.P. art. 703; La. R.S. 15:451; *662 State v. Petterway, 403 So.2d 1157 (La. 1981).
After consideration of both the evidence presented at the suppression hearing and the pertinent evidence given at trial, we find no error in the admission of Johnson's January 30, 2000 statement into evidence. The testimony given by both Detective Johnson and Ivy demonstrated that defendant Johnson was orally given his Miranda warnings, although no rights card was signed, and that defendant Johnson understood and waived those rights. Johnson urges in a pro se supplemental brief that he refused to sign the rights card at the time this statement was given and that the rights card contained in the record was signed the day after the statement was made. However, a review of the record shows that no rights card was introduced into evidence regarding the January 30, 2000 statement. Nor is there evidence that Johnson refused to sign the rights card. This court will not consider references to evidence that is not part of the record on appeal. State v. Pratt, 32-302 (La.App.2d Cir.09/22/99), 748 So.2d 25.
Moreover, the officers' testimony supports the court's conclusion that Johnson's statement was otherwise freely and voluntarily given. Obviously, the court chose to accept the officers' testimony that Johnson was coherent and not impaired by medication to the point he was unable to freely and voluntarily give a statement. The trial court's conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992). We place great weight upon the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. State v. Crews, 28,153 (La. App.2d Cir.05/08/96), 674 So.2d 1082. Here, because the record supports the trial court's determination, we affirm its ruling.

EXCESSIVE SENTENCE
In his final argument, Johnson alleges that the trial court erred in failing to comply with La.C.Cr.P. art. 894.1, because it failed to adequately articulate the factors considered in particularizing the sentence imposed and in imposing an excessive sentence.
We reject the first portion of Johnson's argument. Because the imposed sentence is prescribed by statute, the trial court's compliance with La. C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.04/04/01), 784 So.2d 714; State v. Owens, 32,642 (La. App.2d Cir.10/27/99), 743 So.2d 890, writ. denied, 00-0438 (La.09/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing Johnson. State v. Carlos Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ. denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
Moreover, we cannot conclude that Johnson has shown his sentence to be constitutionally excessive.
The habitual offender law is constitutional in its entirety and the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. The burden is on a defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, a defendant must *663 show by clear and convincing evidence that he is exceptional, which, in this context, means that, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. Id.
In this case, La. R.S. 15:529.1(A)(1)(c)(ii) mandated a life sentence without benefits for Johnson because he was a fourth felony offender and his fourth felony (attempted armed robbery) is defined in La. R.S. 14:2(13)(w) as a crime of violence.[2] The only argument offered in support of the claim that the imposed sentence is excessive is that "no other background was considered by the [t]rial court ...." Such a conclusory and ambiguous allegation is insufficient to clearly and convincingly show that Johnson is the exceptional defendant for which downward departure from the statutorily minimum sentence is required. Therefore, this argument is also without merit.

CONCLUSION
For the foregoing reasons, Johnson's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Two other individuals were also implicated in the robbery.
[2] The recent amendment to La. R.S. 15:529.1(A)(b)(ii), which requires that the fourth felony and two of the prior felonies be defined as crimes of violence, is inapplicable to this case because the offense for which Johnson's sentence was enhanced was committed prior to the amendment's effective date of June 15, 2001.