STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0956

STATE OF LOUISIANA

VERSUS

MICHAEL DAMONTE DIGGS

Judgment Rendered: **DEC 2 7 2019**

* * * * *

On Appeal from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No. 756,226

Honorable Juan W. Pickett, Judge Presiding

* * * * *

<table>
<tr><td>Joe Waitz<br>District Attorney<br>J. Christopher Erny<br>Ellen Daigle Doskey<br>Assistant District Attorneys<br>Houma, LA</td><td>Attorneys for Appellee,<br>State of Louisiana</td></tr>
<tr><td>Gwendolyn K. Brown<br>Louisiana Appellate Project<br>Baton Rouge, LA</td><td>Attorney for Defendant-Appellant,<br>Michael Damonte Diggs</td></tr>
</table>

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**HIGGINBOTHAM, J.**

The defendant, Michael Damonte Diggs, was charged by grand jury indictment with first degree murder on counts one and two, violations of La. R.S. 14:30(A)(3), and with attempted first degree murder on counts three, four, five, and six, violations of La. R.S. 14:30(A)(3) and La. R.S. 14:27.[1] He pled not guilty and, after a trial by jury, was found guilty as charged on each count. The defendant filed a motion for postverdict judgment of acquittal and a motion for new trial. The trial court denied the motion for new trial. The motion for postverdict judgment of acquittal was granted on count three, and denied on the other counts.[2] On counts one and two, the trial court imposed life imprisonment at hard labor on each count. On counts four, five, and six, the trial court imposed fifty years imprisonment at hard labor on each count. The trial court ordered that the sentences run concurrently, without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error to the trial court's rulings on the following: (1) his challenge for cause of a prospective juror during voir dire; (2) his objection to trial testimony regarding Facebook messages; and (3) his motion for new trial.

## STATEMENT OF FACTS

During the evening hours of June 28, 2016, Roderick Smith (the victim of count six) and Troy Deroche (the victim of count one) were riding around "druggin' it" and were ultimately joined by the defendant. Sometime after midnight, Troy and Roderick agreed to drop off the defendant, who was sitting in the backseat of the vehicle, in the Village East neighborhood in Houma. Once they arrived at Thomas Drive in Village East, gunshots were fired from the backseat of the vehicle. John Darjean (the victim of count two), Jaquan Smith (the victim of count four), and

---

[1] The State did not seek the death penalty in this case.

[2] The trial court found that there was insufficient evidence that the alleged victim of count three, Jakai Smith, was present at the scene of the related shooting.

2

Malik Pharr (the victim of count five) were outside on Thomas Drive at the time of the shooting. John was fatally shot in the head, Jaquan was struck in the leg two times, and Malik escaped without injury.

Roderick testified at trial that after hearing the gunfire, he went into a state of shock, accelerated the vehicle, and questioned the defendant, who was the only person in the backseat, what he was doing. The defendant did not respond. Roderick testified that he had no doubt that the defendant was the person who fired a gun from the backseat of the vehicle.

After the initial gunshots, Roderick drove to Samuel Street in the Mechanicville area, hoping that the defendant would exit the vehicle in that area. Once they approached the intersection at Senator Street, the defendant exited the vehicle. Roderick then heard more gunshots, and he and Troy were struck several times. At the time of the trial, Roderick still had bullets in his body, including one that was lodged near his heart. While Roderick survived, Troy died from his gunshot injuries.

The defendant participated in a pretrial interview. After being advised of his **Miranda**[3] rights, he stated that he "heard about" the shootings and repeatedly denied that he was in the vehicle or committed the shootings. At about an hour and twenty-two minutes into the interview, he finally admitted that he was in the vehicle. At that point, the defendant indicated that he was the driver, Troy was the front passenger, and Roderick was in the backseat using the defendant's gun (a .40 caliber Glock handgun) to commit the shootings on Thomas Drive.[4] After further questioning, the defendant stated that a fourth occupant, a "kind of heavy-set" black

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

[4] Cheryl Swearingen of the Louisiana State Police Crime Lab (LSPCL), an expert witness in firearms, determined that all fourteen of the .40 caliber cartridge casings in evidence were fired from the Glock model 22, .40 caliber handgun in evidence. Elizabeth Hamilton of the LSPCL, an expert in DNA analysis, matched a DNA sample removed from the gun to the defendant's DNA reference sample, but did not find a match for Roderick or Troy.

3

male that he did not know, was in the backseat with Roderick. The defendant stated that he sped off after the gunfire and drove to Samuel Street. After Roderick gave him his gun back, the defendant then exited the vehicle, at which point the defendant heard more gunshots coming from the vehicle. When asked who shot Roderick and Troy, the defendant indicated, "I think the big boy shot them, the fat boy." The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues that the trial court erred in denying his challenge for cause to exclude James Belanger, a prospective juror on panel two. The defendant argues that Mr. Belanger complained of a host of medical issues that precluded his ability to serve competently as a juror. He contends that while the prosecutor and trial court made light of Mr. Belanger's professed short-term memory loss, such an issue could have hindered his ability to recall testimony presented over the multi-day trial. Defendant argues that he was prejudiced by the trial court's erroneous denial of his challenge for cause, noting that he was forced to use a peremptory challenge to remove Mr. Belanger and ultimately exhausted all of his peremptory challenges.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A); La. Code Crim. P. art. 786. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. **State v. Mills**, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 486, writs denied, 2014-2027 (La. 5/22/15), 170 So.3d 982 & 2014-2269 (La. 9/18/15), 178 So.3d 139. Louisiana Code of Criminal Procedure article 797(1) provides that the State or the defendant may challenge a juror for cause on the ground that the juror lacks a qualification required by law. When a defendant is forced to

4

utilize a peremptory challenge to correct an error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected. **State v. Mickelson**, 2012-2539 (La. 9/3/14), 149 So.3d 178, 184-85. In such cases, a defendant need make only two showings to establish error warranting reversal of a conviction and sentence: (1) the district court erred in refusing to sustain a challenge for cause; and (2) the defendant exhausted all of his peremptory challenges. **Mickelson**, 149 So.3d at 185. In this case, the defendant exhausted all of his peremptory challenges and used one of his peremptory challenges to remove Mr. Belanger. Therefore, we need only determine whether the trial court erred in denying the defendant's challenge for cause of Mr. Belanger.

In order to qualify to serve as a juror, a person must not be under interdiction or incapable of serving as a juror because of a mental or physical infirmity. La. Code Crim. P. art. 401(A)(4). A person may be challenged for cause on any incapacity which satisfies the court that the challenged person is incapable of performing the duties of a juror in the particular action without prejudice to the substantial rights of the challenging party. La. Code Crim. P. art. 401(B)(1). Further, a person may be challenged for cause when reasonable doubt exists as to the competency of the prospective juror to serve. La. Code Crim. P. art. 401(B)(2); see also La. Code Crim. P. art. 787. The question of a juror's qualifications is addressed to the sound discretion of the trial judge within the bounds prescribed by law; and, although the trial judge's ruling in these matters is subject to review, it will not be disturbed in the absence of clear abuse. **Mills**, 153 So.3d at 488.

A trial court is afforded broad discretion in determining whether to strike a juror for cause because of the trial court's ability to form a first-person impression of prospective jurors during voir dire. **State v. Brown**, 2005-1676 (La. App. 1st Cir. 5/5/06), 935 So.2d 211, 214, writ denied, 2006-1586 (La. 1/8/07), 948 So.2d 121.

The trial court "has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire" as they respond to questioning, whereas the reviewing court reviews the matter only on a transcript in a record. **State v. Dorsey**, 2010-0216 (La. 9/7/11), 74 So.3d 603, 627, cert. denied, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. **State v. Folse**, 2018-0153 (La. App. 1st Cir. 9/21/18), 258 So.3d 188, 197, writ denied, 2018-1743 (La. 4/22/19), 268 So.3d 300; **State v. Tucker**, 49,950 (La. App. 2d Cir. 7/8/15), 170 So.3d 394, 425, writ not considered, 2015-1517 (La. 3/9/18), 237 So.3d 1193. Likewise, the trial court is vested with great discretion in determining whether a juror suffering from a physical infirmity is competent to serve as a juror. **State v. Johnson**, 36,014 (La. App. 2d Cir. 6/12/02), 821 So.2d 652, 660. A decision by a trial court that a juror is not so impaired as to make him incompetent to serve as a juror should not be disturbed unless a review of the voir dire as a whole indicates an abuse of discretion. **Johnson**, 821 So.2d at 660.

Herein, the prospective juror at issue, James Belanger, stated that he was a fifty-one-year-old high school graduate. When the potential jurors were asked if there was any reason why they could not serve, Mr. Belanger responded that he has "some health problems" and stated the following: (1) he sometimes gets light-headed and dizzy; (2) he takes medication to regulate his heartbeat, diabetes, cholesterol, blood clotting, and blood pressure; (3) and he sometimes has short-term memory loss.[5] In expounding on his medication and health issues, Mr. Belanger noted that he sometimes has to take frequent restroom breaks and that it was hard to concentrate during spells of dizziness or light-headedness. Regarding his "short-term" memory loss, when asked if it was an on-going problem, he stated, "Kind of

_____

[5] Mr. Belanger also stated that he had no transportation for getting to court every day. However, this was not the basis for the defendant's motion for cause below, nor does he raise this issue on appeal.

yeah, because I can have a conversation with a person and an hour later, not remember the conversation." When further asked if his problems were strictly due to age or other factors, he stated, "Not sure what's causing all the problems."

In challenging Mr. Belanger for cause, the defense attorney noted his complaint of dizziness and need for frequent bathroom breaks, but stated that the biggest concern was his short-term memory loss. In response, the prosecutor reiterated the issue could be caused by aging, noting that he was about the same age as Mr. Belanger and had similar experiences at times. Conceding that Mr. Belanger had some health issues, the prosecutor argued that Mr. Belanger should not necessarily be excused, noting that numerous people with worse conditions had served as jurors. In response, the defense attorney argued that prior to deliberations, Mr. Belanger could possibly forget the evidence presented during the trial. In denying the challenge for cause, the trial court stated that it listened to Mr. Belanger's responses and that it did not seem as though his professed short-term memory loss was affecting him during voir dire. The court concluded that there was no indication that Mr. Belanger's issues would be prejudicial to anyone.

In according great deference to the trial court's determination, a reviewing court should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the juror's qualification or disqualification. **State v. Magee**, 2004-1887 (La. App. 1st Cir. 5/6/05), 916 So.2d 191, 199, writ denied, 2006-0028 (La. 6/16/06), 929 So.2d 1277. In this case, we find that the trial court's denial of the challenge for cause at issue, based on its observation of Mr. Belanger's behavior during voir dire, was within its great discretion. The trial court was in a superior position to observe the potential juror. There is no indication that Mr. Belanger presented a doctor's excuse or that the trial court was unwilling to accommodate him if necessary. Upon reviewing the voir dire in its entirety, we cannot say that the trial court abused its

7

discretion in denying the challenge for cause. See **Johnson**, 821 So.2d at 660 (wherein a juror claimed she may be inattentive during trial due to attention deficit hyperactivity disorder (ADHD); the trial court, nonetheless, denied the defendant's challenge to the juror for cause based on its observation that the juror had a "very attentive" demeanor during voir and the juror's failure to submit a doctor's excuse documenting her ADHD). Accordingly, we find no merit in assignment of error number one.

## ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE

In a combined argument for assignments of error numbers two and three, the defendant argues that the trial court erred in allowing the State to elicit testimony regarding his Facebook messages and subsequently in denying his motion for new trial based, in part, on the admission of the contested testimony. The defendant notes that the messages were sent after the shootings and were exchanged between the defendant and several friends, none of whom testified at trial. Though the defendant admittedly acquiesced in the admission of his own Facebook statements, he objected to the introduction of statements by his friends as hearsay. While the trial court ruled otherwise, he argues that the precise purpose of the statements was to prove the truth of the matter asserted. Noting that the messages were conveyed in dialect, he argues that they were quite inculpatory and that there was no basis for their admission other than to prove the defendant's guilty knowledge. He further contends that Detective Ryan Trosclair volunteered his opinion that the slang spoken within the messages included an admission that the defendant had killed someone. The defendant contends that the testimony was not properly admitted and was highly inflammatory. The defendant argues that it cannot be said that the guilty verdicts rendered were surely unattributable to the erroneous admission of the hearsay evidence at issue, contending that Roderick's testimony was the only direct evidence of his guilt.

8

All relevant evidence is admissible, and evidence that is not relevant is not admissible. La. Code Evid. art. 402. Louisiana Code of Evidence article 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Louisiana Code of Evidence article 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." In questions of relevancy, much discretion is vested in the trial court, and its rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. **State v. Kitts**, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 965.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. Code Evid. art. 801(C). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. Code Evid. art. 802. The Louisiana Supreme Court has long held that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial and did not contribute to the verdict. **State v. Johnson**, 389 So.2d 1302, 1306 (La. 1980); **State v. McIntyre**, 381 So.2d 408, 411 (La.), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); **State v. Hilton**, 99-1239 (La. App. 1st Cir. 3/31/00), 764 So.2d 1027, 1035, writ denied, 2000-0958 (La. 3/9/01), 786 So.2d 113.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The right of confrontation does not merely allow the defendant to physically confront the witnesses against him but secures the defendant's right to cross examine

the prosecution's witnesses. **Davis v. Alaska**, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); **State v. Robinson**, 2001-0273 (La. 5/17/02), 817 So.2d 1131, 1135; **State v. White**, 2017-0308 (La. App. 1st Cir. 9/15/17), 228 So.3d 213, 219. Also, the confrontation clause of Louisiana's Constitution specifically and expressly guarantees the accused the right to confront and cross examine the witnesses against him. See La. Const. art. I, § 16.

Confrontation errors, however, are subject to a harmless error analysis. **Delaware v. Van Arsdall**, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); **State v. Burbank**, 2002-1407 (La. 4/23/04), 872 So.2d 1049, 1051 (per curiam). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination was fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Factors to be considered by the reviewing court include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. **Van Arsdall**, 475 U.S. at 684, 106 S.Ct at 1438; **State v. Wille**, 559 So.2d 1321, 1332 (La. 1990). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); **State v. Broadway**, 96-2659 (La. 10/19/99), 753 So.2d 801, 817, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).

Herein, the defense attorney objected when Detective Trosclair began reading the defendant's Facebook messages. Specifically, the defendant's objection was made as the State questioned Detective Trosclair as follows:

Q. And what does the message say?

A.    Uh, it's him telling this other individual, 'what's hap, bro', I would take it as 'whatsup, bro'.
Q.    Okay?
A.    And 'I'm booling this bitch, blowin' this gas, we gotta run it.' And it says-

The defense attorney objected at this point. The defense attorney specifically contested the admission of statements that were not made by the defendant, but instead made in response to statements made by the defendant. The State repeatedly noted that the Facebook messages had already been admitted into evidence and that the responses were in context of the defendant's own statements. The trial court overruled the defense attorney's objection, finding that the responses were not being offered for the truth of the matter asserted.[6]

The defendant further, on appeal, references Detective Trosclair's response elicited on cross-examination, when the defense attorney asked, "In those text messages, you say that Michael doesn't deny; does he ever admit that he shot somebody in those text messages?" Prior to the detective's response, the prosecutor inquired, "You're asking him for his opinion? I just want to be clear?" Detective Trosclair then stated, "I can give you my opinion, about him killing a bug." At that point, after the defense attorney told Detective Trosclair that he did not want his opinion, but only wanted an answer as to whether the defendant ever said that he shot someone. Detective Trosclair then responded, "No."

Louisiana's contemporaneous objection rule provides that an irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence. See La. Code Crim. P. art. 841(A); La. Code Evid. art. 103(A)(1); **State v. Mitchell**, 2016-0834 (La. App. 1st Cir. 9/21/17), 231 So.3d 710, 722, writ denied,

---

[6] After the trial court overruled the defense attorney's objection, Detective Trosclair continued to read the Facebook messages, in part, as follows: "'(*Inaudible*) you just caught a body, shit – you ain't gotta say that' 'You know whatsup' ... 'Already bro, I'm a piss on that boy for real. I had killed a bug on live – that's what I was talking about (laugh emoji).'" The defense attorney objected on the grounds of relevancy as Detective Trosclair read the following statement by someone identified as 'SG Diggs' to the jury: "'You know Tootie dead, he got shot in his face five times'; 'I know (emoji) (emoji).'"

2017-1890 (La. 8/31/18), 251 So.3d 410; **State v. Hatfield**, 2013-0813 (La. App. 4th Cir. 7/2/14), 155 So.3d 572, 603, writ denied, 2014-1648 (La. 3/27/15), 162 So.3d 383. Accordingly, a contemporaneous objection is necessary to preserve the issue for appellate review. Additionally, it is well settled that defense counsel must state the basis for his objection when making it and point out the specific error of the trial court. The grounds of the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and correct any claim of prejudice. A defendant is limited on appeal to grounds for an objection articulated at trial. **State v. Patton**, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1216.

As the State noted during trial and in its reply brief on appeal, the defendant did not object when the Facebook messages were admitted into evidence prior to the testimony of Detective Trosclair. Detective Trosclair's testimony was merely cumulative of the statements that were already admitted without objection. See **Mitchell**, 231 So.2d at 722. Thus, even assuming that Detective Trosclair's testimony contained hearsay, it was cumulative and corroborative of other uncontested evidence, and any error in admitting it was harmless. Moreover, Detective Trosclair's brief reference to an opinion that he garnered from the Facebook messages as to whether the defendant admitted to shooting anyone was not only absent an objection by the defendant, but was further elicited by the defense attorney and quickly corrected once the question was clarified. Specifically, the defense attorney interrupted Detective Trosclair before he stated his opinion on the matter. We further note that the members of the jury were allowed to read the statements and could draw their own reasonable inferences therefrom. Considering the foregoing, we find no merit in assignments of error numbers two and three.

**CONVICTIONS AND SENTENCES AFFIRMED.**