CRAIN, J.
| ¡.The defendant, Logan Nestor Mills, was convicted by a jury of armed robbery, armed robbery "with a firearm, aggravated obstruction of a highway of commerce, and two counts of attempted first degree murder. His sentence for the conviction of armed robbery was vacated after he was adjudicated a second-felony offender, and he was sentenced to seventy years at hard labor.[1] He was sentenced to fifteen years at hard labor for the aggravated obstruction of a highway conviction and forty years at hard labor without benefit of parole, probation, or suspension of sentence for each conviction of attempted first degree murder, with those sentences running concurrent with the sentence for armed robbery. He was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence for the armed robbery with a firearm conviction, with that sentence to be served consecutive to the sentence for armed robbery.
We affirm the defendant’s convictions, habitual offender adjudication, and sentences.
FACTS
On April 20, 2011, the defendant and Walter Aswell entered the Capital One Bank on Columbia Street in Bogalusa, wearing masks and carrying guns. While Aswell stood guard at the back, the defendant held up his gun, told the tellers to keep their hands up, and demanded money. One of the tellers handed money to the defendant and triggered the silent alarm. The defendant and Aswell fled the bank in a black Jeep.
13A chase ensued involving units from the Bogalusa Police Department and the Washington Parish Sheriffs Office, with shots being fired from the Jeep at the pursuing units. The chase continued into Mississippi, with shots exchanged between the pursuing officers and the fleeing Jeep. The chase ended in Mississippi when the defendant and Aswell abandoned the Jeep and fled on foot in opposite directions. Both the defendant and Aswell were apprehended and taken into custody after being shot by police. Officers identified the defendant as the passenger in the Jeep who fired multiple shots at police.
The defendant testified at trial that the bank robbery was Aswell’s idea and that he unwillingly participated because Aswell threatened to shoot him if he did not. According to the defendant he was following Aswell’s instructions when he walked into the bank, raised his gun, pointed it at the bank teller, and walked up to her. Aswell remained behind him holding a gun. The defendant took the money that the teller placed on the counter, put it in the front pouch of'the hoodie he was wearing, then turned and walked out. The defendant claimed he was the driver of the Jeep in which he and Aswell fled and that Aswell was riding in the backseat, gripping *486 a gun and instructing him not to stop the vehicle. As the police pursued them, As-well moved into the front passenger seat and began shooting at the police. The defendant denied shooting at police officers or firing any weapons on the day of the robbery. He testified that he ran from the stalled Jeep because the officers were shooting and he was afraid. The defendant fell to the ground and was handcuffed after being shot in the ankle and back. He denied resisting arrest, claiming that the officers beat him after he was handcuffed, which caused serious injuries. Subsequently, the defendant filed suit against the officers in federal court.
i Counseled and pro SE ASSIGNMENTS OF ERROR NUMBER 1
In his first counseled and pro se assignments of error, the defendant contends that the trial court erred in denying his challenges for cause as to prospective jurors Elizabeth Jackson, Lili Huang, Mary Gunnell, and Kelly Crain, because their answers to voir dire questions indicated that they were not qualified to serve on the jury. The record reflects that there was no objection to the trial court’s rulings denying the challenges for cause as to prospective jurors Gunnell and Crain. A defendant may not assign as error on appeal a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. La.Code Crim. Pro. art. 800A. Accordingly, we will not consider the defendant’s arguments regarding Gunnell and Crain.[2]
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const, art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors’ qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421, 425 (LaApp. 1 Cir.), writ denied, 468 So.2d 570 (La.1985); State v. Williams, 457 So.2d 610, 613 (La.1984). An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error; therefore, prejudice is presumed when a defendant’s challenge for cause is erroneously denied and the defendant exhausts all of his | .^peremptory challenges. State v. Taylor, 08-1834 (La.5/25/04), 875 So.2d 58, 62. In this case, because the defendant objected to the trial court’s ruling that denied his for-cause challenges as to prospective jurors Jackson and Huang, and the defendant exhausted all of his peremptory challenges, including peremptory challenges as to both of those prospective jurors, we need only consider whether the trial court abused its discretion in determining that no cause existed for the removal of Huang and Jackson.
Louisiana Code of Criminal Procedure article 797(2) provides, in pertinent part, that the State or the defendant may challenge a juror for cause on the ground *487 that the juror is not impartial, whatever the cause of his partiality. When a juror expresses a predisposition as to the outcome of a trial, a challenge for cause should be granted. Yet, if after subsequent questioning, or rehabilitation, the juror exhibits the ability to disregard previous views and make a decision on the evidence presented at trial, the challenge is properly denied. When addressing whether a challenge for cause should be granted, the trial judge must look at the juror’s responses during his or her entire testimony, not just isolated answers. State v. Sparks, 88-0017 (La.5/11/11), 68 So.3d 435, 461, cert. denied, — U.S.—, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Martin, 558 So.2d 654, 658 (La.App. 1 Cir.), writ denied, 564 So.2d 318 (La.1990). However, if a prospective juror is able, after examination by counsel and the court, to declare to the court’s reasonable satisfaction that he is able to render an impartial verdict according to the law and evidence, it is the trial court’s duty to |Bdeny a challenge for cause. See State v. Claiborne, 397 So.2d 486, 489 (La.1981).
 A trial court is afforded broad discretion in determining whether to strike a juror for cause because of the trial court’s ability to form a first-person impression of prospective jurors during voir dire. State v. Brown, 05-1676 (LaApp. 1 Cir. 5/5/06), 935 So.2d 211, 214, unit denied, 06-1586 (La.1/8/07), 948 So.2d 121. Therefore, the trial court’s rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Lee, 637 So.2d 102, 108 (La.1994).
Jackson expressed that she had a strong opinion about guns. In response to questioning by the court, Jackson indicated she would try to separate her personal convictions. She further stated that she would try to be fair, but did have a concern. She also indicated that she would probably want to hear the defendant explain his intention in taking the gun with him. When asked if she could afford the defendant his right to remain silent, Jackson stated that she would probably want to hear from the defendant, but that she did not think she would hold it against him if he did not testify.
The defense challenged Jackson for cause arguing that she stated she would have to hear the defendant’s explanation for why he had a gun, suggesting that she would require that the defendant testify. The State argued that the defense was taking Jackson’s answers out of context, and- the court responded that it did not perceive Jackson’s response to be that she would like to hear from the defendant. The defense then challenged Jackson for cause on the basis that she had a strong opinion about guns, again arguing that Jackson stated she wanted to hear the 17defendant’s explanation for having a gun. The court denied the challenge for cause.
During the course of voir dire it is not uncommon for prospective jurors to express feelings of apprehension about serving on a case and to question their own ability to be fair. Deference is given to the trial court’s determination as to whether such feelings of apprehension rise to the level of warranting being excused for cause because the trial court has the benefit of seeing the prospective juror’s facial expressions and hearing their vocal intonations as he or she responds to questions, which are not discernable from a cold tran *488 script. See State v. Dorsey, 10-0216 (La.9/7/11), 74 So.3d 608, 627, cert. denied, — U.S. —, 182 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Here, Jackson never expressed a predisposition about the outcome of the case. Faced with the weighty burden of judging, she was candid in stating her feelings about issues and declared that she would try to be fair and did not think she would hold it against the defendant if he did not testify. She gave no indication that she would not follow the law as given to her by the court.
After reviewing Jackson’s voir dire examination as a whole, we find that the totality of her responses demonstrated her willingness and ability to decide this case impartially according to the law and evidence, and did not reveal facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred. The trial court did not abuse its broad discretion in denying the challenge for cause as to prospective juror Jackson.
The defendant argues that the trial court erred in denying his challenge for cause as to prospective juror Huang due to an English language barrier. In order to serve as a juror, a person must be able to read, write, and speak the English language and be possessed of sufficient knowledge of the English language. La. _jCode8 Crim. Pro. art. 401A(3). The defendant contends that Huang’s voir dire responses indicate that she was not so qualified.
Huang stated that she moved to Bogalu-sa in 1998, graduated from Bogalusa High School, and worked at China Star Restaurant. She revealed that English was her second language and expressed concerns about her ability to serve as a juror because she sometimes either skips or guesses at the meaning of words she does not understand. She indicated that she understood the concepts that had been discussed in court but also had a fear that she may have to guess the meaning of some words. Defense counsel challenged Huang for cause arguing that she could potentially miss testimony. The State responded that Huang’s answers to questions indicated she understood the proceedings. The court acknowledged Huang’s personal concerns but denied the challenge for cause, stating that Huang was as competent as the other potential jurors.
Again, the question of a juror’s qualifications is addressed to the sound discretion of the trial judge within the bounds prescribed by law; and, although the trial judge’s ruling in these matters is subject to review, it will not be disturbed in the absence of clear abuse. State v. Scott, 278 So.2d 121,125 (La.1973); State v. Mitchell, 08-136 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 734. After a thorough review, we find no abuse of discretion in the trial court’s ruling that denied the for-cause challenge of Huang. She had been living in Bogalu-sa approximately fourteen years at the time of trial and had attended and graduated from Bogalusa High School. While being questioned about herself and the legal principles presented, she demonstrated her ability to speak and comprehend the English language. Although Huang expressed concerns about English being her second | ¡language, her exchanges with counsel and the court indicated she possessed sufficient knowledge of the English language to qualify her as a juror.
These assignments of error are without merit.
COUNSELED AND PRO SE ASSIGNMENTS OF ERROR NUMBER 2
In his second counseled and pro se assignments of error, the defendant argues that he was denied his constitutional right *489 of confrontation when the trial court refused to allow him to question Aswell regarding the maximum possible sentences the law allows for the crimes to which Aswell pled guilty. At trial the defendant admitted that he committed armed robbery, but urged the defense of justification, claiming that he acted under threat of being shot by Aswell, and he denied committing attempted first degree murder. Aswell offered testimony for the State that directly contradicted the defendant’s defense. On appeal, the defendant contends that the trial court’s refusal to allow him to question Aswell regarding Aswell’s maximum sentencing exposure for the crimes committed kept the jurors from learning the circumstances of Aswell’s plea agreement, which prevented the jury from evaluating Aswell’s credibility and denied the defendant his right to present a defense.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The right of confrontation does not merely allow the defendant to physically confront the witnesses against him, but secures the defendant’s right to cross-examine the prosecution’s witnesses. Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135. The confrontation clause of Louisiana’s | ^constitution specifically and expressly guarantees the accused the right to confront and cross-examine the witnesses against him. See La. Const, art. 1, § 16.
Cross-examination is the primary means of testing the truthfulness of a witness’ testimony. Davis, 415 U.S. at 316, 94 S.Ct. at 1110; State v. Robinson, 817 So.2d at 1135. “[E]xposure of a witness’ motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.” Davis, 415 U.S. at 316-317, 94 S.Ct. at 1110. In order to cross-examine a witness effectively, a defendant must be afforded the opportunity to demonstrate any bias or self-interest that is attached to that witness’s testimony. See La.Code Evid. art. 607D(1); State v. Rankin, 465 So.2d 679, 681 (La.1985). A witness’s hope or knowledge that he will receive leniency from the State is highly relevant to establish bias or interest, as is the possibility that the prosecution may have some leverage over a witness due to pending criminal charges or a plea agreement. See State v. Rankin, 465 So.2d at 681; State v. Brady, 381 So.2d 819, 822 (La.1980); State v. Franks, 363 So.2d 518, 520 (La.1978).
The State called Aswell to testify at trial against the defendant. He said that he pled guilty to armed robbery, three counts of attempted first degree murder, aggravated obstruction of a highway, and illegal use of a firearm — the same charges for which the defendant was being tried. Aswell indicated that he had not yet been sentenced, but would be sentenced to anywhere from twenty-five to thirty years. On cross-examination, Aswell acknowledged that his plea agreement included his agreement to testify against the defendant and reiterated that his expected sentence under the plea agreement was between twenty-five and thirty years. The State objected when defense counsel asked Aswell about his maximum sentencing exposure absent the plea agreement. Defense counsel argued that if | n Aswell did not testify in conformity with his written statement, the court would not be bound by the agreement and could “max him out.” The court ruled that defense counsel could not, through his cross-examination of Aswell, reveal the maximum sentencing exposure allowed by law because doing so would reveal the defendant’s potential sentencing exposure to the jury. Defense counsel *490 then asked Aswell if he faced substantially more time if he did not testify in accordance with his pre-trial statement. Aswell answered that his plea agreement was that he would be sentenced to no more than thirty years no matter what. At a bench conference the State confirmed that As-well’s plea agreement was that he would be sentenced to thirty years if he pled guilty, with the possibility that he would be ' sentenced to only twenty-five years if As-well testified truthfully and if the court agreed. The court then upheld its previous ruling prohibiting defense counsel from examining Aswell regarding the maximum possible sentences he could have received absent the plea agreement.
The record establishes that Aswell agreed to testify and plead guilty in return for a twenty-five year sentence if he testified truthfully in accordance with his pretrial statement. Otherwise, he was to be sentenced to serve thirty years. The State argues that, because the only reduction in .sentence that was directly linked to As-well’s agreement to testify truthfully was the promised reduction from thirty to twenty-five years, the maximum possible sentences for the convictions were not relevant. The defendant counters that As-well’s sentencing exposure was ninety-nine years for the armed robbery, fifty years for each of the three counts of attempted first degree murder, and fifteen years for aggravated obstruction of a highway. He argues that if maximum sentences were imposed consecutively, Aswell faced a potential total sentence of two hundred sixty-four years, and [ 12AsweIl’s plea agreement reduced that exposure. The defendant argues that revealing the maximum total sentencing exposure was necessary to show the leverage which the State held over Aswell relative to his testimony and, consequently, Aswell’s potential bias.
Plea agreements involving State •witnesses are an essential tool for the prosecution of many criminal cases. Consequently, they are fertile ground for cross-examination by a defendant seeking to expose bias on the part of the State’s witnesses. The specific terms of the plea agreement reveal the full extent of both the leverage being exerted by the State and the potential bias on the part of the witness. The facts surrounding a witness’s plea agreement must be considered and weighed by. the factfinder so as to judge the truthfulness of the witness’s testimony. Cf. State v. Rankin, 465 So.2d at 681-82; State v. Brady, 381 So.2d at 822.
Although the State asserts that the terms of the plea agreement did not include a reservation of its right to seek a sentence of more than thirty years if As-well did not testify against the defendant according to his pre-trial statement, that does not negate the fact that Aswell admitted committing crimes that carried a much greater sentencing exposure than thirty years. The defendant was legally entitled to explore and develop facts from which the jury might infer the reason the State agreed to cap Aswell’s potential sentences at only thirty years. Whether the promise of a thirty-year sentence was part of As-well’s plea agreement to testify for the State or, as contended by the State, was independent of that agreement, is a fact that could affect the jury’s perception of the leverage exerted by the State and Aswell’s potential bias. The State’s agreement to cap Aswell’s sentence at thirty years, alone, could have influenced As-well’s willingness to testify. The difference between reducing Aswell’s sentencing exposure from thirty years to twenty-five | isyears, rather than from two hundred sixty-four years to twenty-five years, could be significant and it was the prerogative of the jury to weigh that information in judg *491 ing Aswell’s credibility and the truthfulness of his testimony.
The trial court’s reason for limiting the defendant’s cross-examination of Aswell was to safeguard the defendant’s potential sentencing exposure from being indirectly revealed to the jury, which is reasonable. Although our law neither requires nor prohibits a jury from Jpeing charged on the penalty for the crimes with which an accused is charged, the general rule is that the jury need not be told of the applicable penalty.[3] See State v. Blackwell, 298 So.2d 798, 804 (La.1974) (on rehearing), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 48 L.Ed.2d 656 (1975); State v. Lilly, 12-0008 (La.App. 1 Cir. 9/21/12), 111 So.3d 45, 52, writ denied, 12-2277(La.5/31/13), 118 So.3d 386. This is be- ; cause imposition of sentence is solely within the province of the judge and is not a function of the jury, which is concerned with the guilt or innocence of the accused. See State v. Lilly, 118 So.3d at 52. However, in this case the defendant’s stated goal was not to inform the jury of the sentencing range he faced if convicted, but to show the State’s possible leverage over Aswell. When the desire not to confuse the jury as to its proper role by indirectly informing it of the defendant’s possible sentencing exposure is balanced against the defendant’s constitutional right to confront his accusers through fully effective cross-examination, the defendant’s constitutional rights must triumph.
The defendant should have been permitted to question Aswell regarding the maximum sentences that he could have received absent his plea agreement. With Jj^the benefit of that information, the jury, as the sole triers of fact and credibility, could appropriately draw inferences relating to the State’s leverage over Aswell. Without the benefit of that information, the jury was limited in its ability to determine bias or impartiality on the part of Aswell. Under' the particular facts presented, the trial court’s ruling infringed on the defendant’s constitutional confrontation right by denying him the right to fully cross-examine Aswell.[4]
Confrontation errors are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 681,106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (noting that the Constitution entitles a criminal defendant to a fair trial, not a perfect one). When a confrontation error is discovered, the United States Supreme Court has instructed:
The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness’s testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material *492 points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.
Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. An error is harmless if the verdict rendered was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081,124 L.Ed.2d 182 (1993).
The defendant does not deny that he committed armed robbery; rather, he claims that his conduct was justified and therefore excusable. The defendant characterizes Aswell as an absolutely critical witness for the State both for | ^supporting the State’s case in chief and for directly attacking the heart of his justification defense. Justification defenses are based on circumstances that make the accused’s conduct excusable on policy grounds and are therefore treated as affirmative defenses that the accused must establish by a preponderance of the evidence. See State v. Cheatwood, 458 So.2d 907, 910 (La.1984); State v. Jeanfreau, 11-1237 (La.App. 1 Cir. 2/10/12), 2012 WL 602384; State v. Schell, 492 So.2d 169, 171 (La.App. 1 Cir.), writ denied, 496 So.2d 1042 (La.1986). The State is not required to prove the absence of excusable circumstances. State in Interest of ML and PL, 95-0045 (La.9/5/95), 660 So.2d 830, 834.
The defendant’s justification defense rested solely on his own testimony and therefore hinged on the jury finding him to be credible. The defendant explained that he and Aswell were friends and the subject of robbing a bank came up as “a joke” approximately a month before this incident. The night before the incident, the defendant and Aswell went running together on the St. Tammany Trace, and Aswell again brought up the idea of robbing a bank. The defendant stated that he told Aswell it was a stupid idea and that he would not help Aswell. When the defendant attempted to leave, he heard a gunshot and turned to see Aswell pointing a gun at him. Aswell threatened to shoot the defendant if the defendant did not help him. The defendant testified that he “basically gave up,” believing he would only be driving Aswell to the bank and waiting in the car.
The defendant changed into clothes that Aswell pulled out of a backpack, and tied a black t-shirt around his face like a mask as Aswell directed. The defendant testified that he followed Aswell’s instructions, and the two walked to a nearby subdivision and, near sunrise, stole a Jeep. The defendant drove the Jeep with Aswell riding in the rear passenger seat holding the gun. Following Aswell’s Indirections, the defendant pulled off of the road where they waited for approximately two and a half to three hours before driving toward Bogalu-sa. Outside the bank, Aswell for the first time instructed the defendant to enter the bank with him and again threatened to shoot him if he did not comply.
The defendant testified that he drove the Jeep after he and Aswell left the bank and that Aswell sat in the back passenger seat gripping his pistol and instructing him where to go. According to the defendant, once one of the police units approached the side of the jeep, Aswell moved into the front passenger seat and began firing shots at the police unit. The defendant denied shooting at police officers or firing any weapons on the day of the robbery.
Aswell’s testimony contradicted that of the defendant; however, for purposes of the harmless error analysis, we must examine the record for corroboration since it must be assumed that the damaging potential of the cross-examination was realized and that Aswell’s testimony was discredited. See Delaware v. Van Arsdall, 475 U.S. at 684,106 S.Ct. at 1438.
*493 Deputy Scott Seals with the St. Tammany Parish Sheriffs Office, and Officers Chad Cassard and Patrick Lyons of the Bogalusa Police Department, who were involved in the chase and arrest of the defendant, also testified for the State. They described multiple shots fired from the Jeep at the deputies, one of which shattered the rear window of Deputy Seals’ police unit and struck the cage behind his head. Officers Cassard and Lyons identified the passenger as the shooter. The officers testified that at some point during the chase, the Jeep stalled and coasted into the parking lot of an old grocery store. Officer Cassard testified that the passenger continued to shoot at the officers from the Jeep after it stopped. Upon exiting the Jeep, the passenger was wearing a mask and pointed his pistol at |17Officer Cassard. The driver and passenger met in front of the Jeep before the two ran in opposite directions. The driver was subdued first. Officer Cassard and Deputy Seals then pursued the passenger. Deputy Seals testified that he saw the passenger at the edge of the woods, and that the passenger raised a gun at him. Deputy Seals then fired and saw the passenger fall. Deputy Seals, Officer Cas-sard, and Officer Lyons struggled with the passenger and described him as trying to reach his pistol even after being shot. Once subdued, the passenger’s mask was removed. Each of the officers identified the defendant as the passenger.
The officers’ testimony directly contradicted the defendant’s testimony that he was the driver in the Jeep, that he did not fire at the officers, and that he did not struggle with the police. The officers’ testimony regarding the defendant’s actions upon exiting the Jeep also contradicted the defendant’s justification theory that he was acting under the compulsion of Aswell’s threats. See and compare State v. English, 34,164 (La.App. 2 Cir. 12/20/00), 774 So.2d 1186, 1191-92, writ denied, 01-0520 (La.10/12/01), 799 So.2d 499.[5]
Additionally, the physical evidence contradicted the defendant’s testimony. On the date of the incident, a 9 mm Beretta pistol was recovered in the area where the defendant was apprehended. When the defendant and Aswell exited the Jeep, As-well ran in the opposite direction from the defendant. A few days later, a 9 mm H & K pistol was located near the area where Aswell had been apprehended. An expert in firearms examination and tool mark identification examined both pistols. He concluded that the 9 mm casings in evidence were all ejected by the Beretta. | irTIius, the entire weight of the testimony and physical evidence contradicted the defendant’s testimony and established that the defendant was the passenger in the Jeep and was in possession of the Beretta that was fired multiple times at the pursuing police officers.
It is the function of the jury to weigh the testimony of every witness. If the jury determines that a witness willfully or deliberately testified falsely to any material fact for the purpose of deceiving it, then the jury may conclude that the witness’s testimony is unworthy of belief and disregard the entirety of the testimony as proving nothing. See State v. Petitto, 12-1670 (La.App. 1 Cir. 4/26/13), 116 So.3d 761, 770, writ denied, 13-1183 *494 (La.l1/22/13), 126 So.Bd 477. The jury’s verdicts finding the defendant guilty of attempted first degree murder reflect that the jury clearly rejected the defendant’s testimony that he was not the driver and that he did not fire shots at the police officers. The jury necessarily determined that the defendant testified falsely as to these material facts. Consequently, the jury was justified in rejecting the entirety of the defendant’s testimony, including his justification defense.[6]
After considering all relevant factors and the evidence presented by the State, we conclude that the-jury’s verdicts were surely not attributable to the trial court’s error in denying the defendant the right to fully cross-examine Aswell as to 119his maximum sentencing exposure prior to entry of the plea agreement. The jury clearly rejected the defendant’s testimony, which was the only evidence that could have possibly supported his claimed defense of justification. Therefore, the confrontation error was harmless beyond a reasonable doubt. See La.Code Crim. Pro. art. 921; State v. Rankin, 465 So.2d at 683-85.
COUNSELED AND PRO SE ASSIGNMENTS OF ERROR NUMBER 3
In his last counseled and third pro se assignments of error, the defendant argues that the trial court erred in allowing the State to impeach him with the civil petition filed on his behalf in federal court, which alleged that the defendant was a passenger in the Jeep.[7] According to the defendant, that petition was “rank hearsay” and could not be considered a statement against interest.
Before the defendant testified, his counsel urged a motion in limine seeking to limit the State’s cross-examination of the defendant by excluding statements made in the civil petition. According to the defendant, the petition was unverified and the statements contained within it were inadmissible hearsay. The defendant also argued that the statements made in the petition were those of the defendant’s civil attorney who was not called to testify. The trial court denied the motion in li-mine, finding that the statement was one against interest in a legal proceeding. The court stated that if the defendant took the stand and testified that he was actually the driver of the Jeep, the door would be open to cross-examination based upon the federal pleading and that the defendant could explain the purpose of the representation in the petition.
The defendant took the stand and testified that he was the driver of the Jeep. *495 During direct examination, he explained that he understood the “legal definition” 120of “passenger,” as used in the petition, to mean anyone in the vehicle, even the driver. The defendant testified that he drove the Jeep away from the bank with Aswell riding as passenger, and maintained that he did not shoot at the police or fire any weapons. During cross-examination, when questioned about the federal lawsuit alleging that he was the passenger, the defendant explained that he told his attorney that he was driving the Jeep. He then indicated that he had not spoken to the California attorney representing him in the federal suit, but “[t]hey talk,” implying that the attorney in the federal suit communicated with him through his defense counsel.
An accused who takes the stand is subject to impeachment by discreditation as is any other witness. La.Code Evid. art. 607A; State v. Vessell, 450 So.2d 938, 946 (La.1984). To attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. La.Code Evid. art. 607C. By taking the stand and testifying that he drove the Jeep, the defendant opened the door for attack on his credibility via the civil petition.[8] See State v. Schrader, 518 So.2d 1024, 1038 (La.1988).
These assignments of error are without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 4
In his fourth pro se assignment of error, the defendant argues that the prosecutor committed reversible error during closing arguments by making highly prejudicial and inflammatory remarks and intentionally misstating testimony.
During closing argument, the prosecutor stated:
_J_2]Yes [the Bogalusa Police Department officials who testified at trial] were interested if any of their officers had abused these men after they were handcuffed and brought under control. But until this week, Walter Aswell couldn’t say it was, you know, who it was, what happened. And here in the courtroom he said it wasn’t these three officers.
Defense counsel objected and argued that the prosecutor’s comments mischarac-terized Aswell’s testimony. The trial court sustained the objection. At trial, three officers were brought into the courtroom, and Aswell was asked if he could identify the man who struck him out of the three. He responded, “Not out of those three.” He went on to say, “I don’t believe any of those three were him, but, like I said, there were, there was more than one person that struck me.”
Referring to the fact that the defendant was pulling on his chest tubes at the hospital after being brought in for the injuries he sustained on the date of the incident, the prosecutor stated:
They [the officers] were in a fight for their lives. Just because there were three of them and they were bigger, he’s still fighting. And a gun is a great equalizer. Little guys with guns can kill big guys.
And what do we know? He was still fighting at the hospital.
*496 The defendant objected, arguing that that was not the testimony before the court. The trial court overruled the objection, stating that it was up to the jury to decide. At trial, Dr. Richard Friend testified that pulling on chest tubes is not indicative of a level of consciousness and that combative behavior is very common in patients that are being ventilated, have tubes in them, and are experiencing pain.[9]
Louisiana Code of Criminal Procedure article 774 confines the scope of argument to “evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.”
_[_2gThe trial court has broad discretion in controlling the scope of the opening and closing arguments. State v. Prestridge, 399 So.2d 564, 580 (La.1981). However, even if the prosecutor exceeds these bounds, the court will not reverse a conviction if not “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. See State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, 200, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995).
The defendant has not shown how the jury was influenced by the alleged misstatements or how they contributed to the verdicts. In light of the testimony presented in this case, we do not find that the jury’s verdicts were the result of the argument made by the prosecutor, but rather a result of the evidence of the defendant’s guilt. Credit should be accorded to the good sense and fair-mindedness of the jurors who heard the evidence presented during the trial. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, 716, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998). Additionally, the trial court properly charged the jury that the statements and arguments made by attorneys are not evidence, and that the opening statements and closing arguments are not to be considered as evidence. The jury was also instructed that in closing arguments, the attorneys were permitted to present their contentions regarding what the evidence had shown or not shown and what conclusions they thought may be drawn from the evidence. Thus, any possible prejudice from the prosecutor’s remarks was cured by the trial court’s charge to the jury. See State v. Vaccaro, 411 So.2d 415, 428 (La.1982). Accordingly, this assignment of error has no merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 5
The defendant complains in his fifth pro se assignment of error that his trial counsel was ineffective for failing to object to the prosecutor’s alleged | agmischaracterization of testimony of the individuals driving by the bank after the robbery. Specifically, the defendant points to the prosecutor’s remark that four of the five individuals testifying were in agreement.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court, where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Car *497 ter, 96-0387 (La.App. 1 Cir. 11/8/96), 684 So.2d 432, 438.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Felder, 00-2887 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 369-70, writ denied, 01-3027 (La.10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir. 1992), writ denied, 614 So.2d 1263 (La.1993).
I^Five individuals who were in vehicles that drove by the bank after the robbery testified at trial. Geraldine Ledet testified that she saw two people and that the first person entered the driver’s side of the Jeep. She saw the other person stop and pick up something. Dianna Thomas, who was riding with Ledet, testified that she saw only one person. The person she saw bent over, put money in a bag, and then got into the driver’s seat in the Jeep. Wanda Terrell, Kermit Martin, and Amanda Carnegie were riding in a vehicle together. Terrell testified that she saw two men exit the bank and one of them bent down to pick up something. Carnegie saw two people exit the bank and saw one of them drop money, stop, and pick it up. She was not certain whether the first person she saw exit the bank entered the driver’s side of the Jeep. Martin testified that the first person got into the driver’s side and the second person, who stopped to pick up money, entered the passenger’s side.
In her closing argument, the prosecutor stated that Ledet and Thomas testified that they saw the person who dropped the money and bent down to pick it up get inside the driver’s side of the vehicle. She also stated that Carnegie and Terrell testified that they saw two people exit the bank. The first person entered the passenger side of the Jeep and the second person bent over, picked up something, and entered the driver’s side of the Jeep. Finally, the prosecutor stated that Martin got the two individuals “switched up” and that he thought the second person who exited the bank entered the passenger side of the Jeep. After she reviewed their testimony, the prosecutor stated, “you had five people — and four of them are absolutely in agreement. And Mr. Martin, who was in the backseat, got a little — got them switched.”
12/The prosecutor’s statements are argument. While she argued that the witnesses were in agreement, the jury heard the testimony and was charged to distinguish the evidence from argument. The jury was properly cautioned that what the attorneys said in closing argument was not evidence. Furthermore, the State presented substantial evidence, including the testimony of the officers involved in the chase and subsequent shoot-out and struggle with the defendant that established that the defendant was the passenger in the jeep. Thus, even assuming that the *498 prosecutor’s remarks were objectionable and that defense counsel should have objected, considering the trial court’s specific instruction regarding argument by counsel and the other evidence presented by the State, the defendant was not prejudiced by the alleged deficient performance. Therefore, the-defendant has failed to make the required showing of sufficient prejudice, and as such, his claim of ineffective assistance of counsel is without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 6
In his last pro se assignment of error, the defendant argues that he was denied a trial “with any semblance of fairness.” Specifically, he contends that reversal is required due to the errors complained of in his first-five assignments of error. Having individually addressed each of those arguments and having found them to provide no basis for relief, we find this assignment of error to be without merit.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.

. At the time of the imposition of the habitual offender sentence, the trial court did not state that it would be served without the benefit of parole, probation, or suspension of sentence, as is required by Louisiana Revised Statute 14:64. See State v. Bruins, 407 So.2d 685, 687 (La.1981). Similarly, the minute entry does not mention the restriction of these benefits. Nonetheless, these sentencing restrictions are automatic pursuant to Louisiana Revised Statute 15:301.1A. See State v. Williams, 00-1725 (La. 11/28/01), 800 So.2d 790, 799.

. The defendant’s reliance in his pro se brief upon State v. Pinion, 06-2346 (La. 10/26/07), 968 So.2d 131, 136 (per curiam) is misplaced. Pinion involved the requirement of accepting an obnoxious juror to prove prejudice on appeal and made no mention of Louisiana Code of Criminal Procedure article 800. The issue of prejudice is not before us. Rather, we rely on the clear language of Article 800 and the procedure recited in State v. Cousan, 94-2503 (La. 11/25/96), 684 So.2d 382, 388-89, both of which require that a defendant lodge a contemporaneous objection to the trial court's ruling in order to assign as error the trial court's refusal to sustain his challenge for cause.

. The jury must be informed of the penalty when the statutory offense requires a mandatory penalty with no judicial discretion as to its imposition following the verdict. See State v. Lilly, 111 So.3d at 52; State v. Albert, 430 So.2d 1279, 1286 (La.App. 1 Cir.), writ denied, 433 So.2d 711 (La. 1983).

. Compare State v. Bennett, 550 So.2d 201, 204-205 (La.App. 3 Cir. 1989), writ denied, 554 So.2d 1236 (La.1990) (finding that the defendant’s constitutional right of cross-examination was violated when he was not allowed to question a witness about his plea agreement, but failing to then conduct a harmless error analysis).

. Notably, a condition for application of the justification defense is that the defendant report to the proper authorities when he attains a position of safety from the immediate threat. See Schell, 492 So.2d at 171. Here, the evidence established that instead of submitting and reporting to the authorities, the defendant fled. Flight and attempt to avoid apprehension, while not conclusive of guilt, are evidence of consciousness of guilt. State v. Fuller, 418 So.2d 591, 593 (La.1982).

. All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. La. R.S. 14:24. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state, which in the case of attempted first degree murder is specific intent to kill. State v. Smith, 07-2028 (La. 10/20/09), 23 So.3d 291, 300; State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, 930, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). It is not enough that his accomplice have the intent, the State must prove that the defendant had the required mental element. State v. Tate, 851 So.2d at 930. The State’s entire premise was that the defendant was the passenger in the Jeep who fired at the officers during the chase and aimed his pistol at the officers thereafter. The State did not present evidence or argue that the defendant was a principal to crimes committed by As-well. Rather, the State presented evidence upon which the jury reasonably could have found the defendant guilty of the crimes charged.

. In the federal lawsuit, the defendant asserted a cause of action under Title 42, Section 1983 of the United States Code against the arresting officers.

. We note that the statements contained in the defendant’s civil petition did not constitute hearsay. The allegations in the civil petition were made by the attorney hired by the defendant to file the suit on his behalf. A statement is not hearsay if it is offered against a party and is by a person authorized by him to make a statement concerning the subject. La.Code Evid. art. 801D(2)(c).

. The defendant points out additional comments made by the prosecutor and contends that they were also highly prejudicial and inflammatory. However, his counsel failed to object to those comments. Therefore, the defendant waived any error as to those comments by failing to object to them during closing argument. See La.Code Crim. Pro. art. 841.