NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 KA 1491

STATE OF LOUISIANA

VERSUS

KEVIN HAMBURG

*Judgment Rendered:* JUN 0 6 2022

* * * * * * * *

Appealed from the
18th Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Case No. 171833

The Honorable Tonya S. Lurry, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Jane L. Beebe<br>Addis, Louisiana | Counsel for Defendant/Appellant<br>Kevin Hamburg |
| Antonio M. "Tony" Clayton<br>District Attorney<br>Terri Russo Lacy<br>Port Allen, Louisiana | Counsel for Appellee<br>State of Louisiana |

* * * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**THERIOT, J.**

The defendant, Kevin Hamburg, was charged by grand jury indictment with attempted second degree murder, a violation of La. R.S. 14:30.1 and La. R.S. 14:27 (count 1); attempted armed robbery, a violation of La. R.S. 14:64 and La. R.S. 14:27 (count 2); and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1 (count 3). He pled not guilty and, following a jury trial, was found guilty as charged on all three counts. For the attempted second degree murder conviction, the defendant was sentenced to fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; for the attempted armed robbery conviction, he was sentenced to forty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Counts 1 and 2 were ordered to run concurrently. For the possession of a firearm by a convicted felon conviction, the defendant was sentenced to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The sentence on count 3 was ordered to run consecutively to the other two counts. The defendant now appeals, designating two assignments of error. We affirm the convictions and sentences.

## FACTS

On the morning of August 16, 2017, Jeremy Gremillion got off of work at about 4:30 a.m. and went to LA Express, a casino in Erwinville, West Baton Rouge Parish. Every day after work, Jeremy visited his friends at LA Express before going home. At about 5:05 a.m., Jeremy left LA Express and walked toward his truck in the parking lot. The defendant was in front of Jeremy's truck, leaning against the wall. As Jeremy neared his truck, the defendant approached him, pointed a silver pistol at his chest, and requested his keys. Jeremy ran toward his truck in an attempt to get away. The defendant shot Jeremy in the back. Jeremy ran into LA Express and collapsed. He was transported to the hospital by ambulance

2

and underwent emergency surgery. His intestines were torn, and the bullet remained inside of his body until it was removed two months later.

Following an investigation at the scene, the police almost immediately identified the defendant as the shooter. Later on the same day, the police learned the defendant was alone at his grandmother's apartment at Maison Pointe Coupee Apartments in Pointe Coupee Parish. An officer watching the apartment from across the street observed the defendant leave with a plastic bag, then return to the apartment without the bag, seconds later. It was subsequently learned that the defendant threw the bag away in a dumpster at the apartments and that the bag contained a pair of black boots. When police arrived at the apartment, the defendant refused to come out of the apartment. A negotiator began talking to the defendant on the phone, but the defendant shortly thereafter stopped answering the phone. After about an hour, the police deployed tear gas into the apartment. The defendant still refused to come out and holed up in the bathroom. Tear gas was deployed in the bathroom, and the defendant came outside and was arrested. After the standoff, the police located the defendant's cellphone inside the microwave and seized the cellphone.

The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the trial court erred in denying his cause challenges of prospective jurors Andrea Brown and Maria Ramagos. Specifically, the defendant contends that Brown and Ramagos indicated that they could not be impartial.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and

3

discovering bases for the intelligent exercise of cause and peremptory challenges. **State v. Mills,** 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 486, writ denied, 2014-2027 (La. 5/22/15), 170 So.3d 982 and writ denied, 2014-2269 (La. 9/18/15), 178 So.3d 139. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. A trial court is accorded great discretion in determining whether to strike a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. **Mills,** 153 So.3d at 487.

A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La. C.Cr.P. art. 800A. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been error warranting reversal of the conviction, the defendant need only show: (1) the erroneous denial of a challenge for cause, and (2) the use of all his peremptory challenges. **State v. Robertson,** 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280-81.

Defense counsel raised cause challenges for prospective jurors, Andrea Brown and Maria Ramagos, which the trial court denied. Brown and Ramagos were peremptorily struck by defense counsel and, thus, did not serve on the jury of the defendant's trial. It is undisputed that defense counsel exhausted all of his peremptory challenges before the selection of the twelfth juror.[1] Therefore, we

---

[1] The crime of attempted second degree murder is punishable by imprisonment at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:30.1B and 14:27. Cases in which the punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. La. Const. art. I, § 17(A); La. C.Cr.P. art. 782A. In trials of offenses punishable necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges. La. C.Cr.P. art. 799.

need only determine the issue of whether the trial court erred in denying the defendant's cause challenges of Brown and Ramagos.

The defendant asserts in brief that Brown and Ramagos could not be fair and impartial. Specifically, the defendant avers they could not follow the law because, when asked by defense counsel how they would vote if they had a significant reasonable doubt, they said they would still vote guilty. Without further inquiry, according to the defendant, their answers without any rehabilitation were sufficient grounds for cause challenges. These prospective jurors, the defendant asserts, should have at least been questioned further by the trial court before the cause challenges were denied.

> Louisiana Code of Criminal Procedure article 797 states, in pertinent part,
>
> The state or the defendant may challenge a juror for cause on the ground that:
> &ast;   &ast;   &ast;   &ast;   &ast;
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
> &ast;   &ast;   &ast;   &ast;   &ast;
> (4) The juror will not accept the law as given to him by the court[.]

During voir dire, defense counsel discussed with the prospective jurors the burden of proof and examples of reasonable doubt. The following exchange then took place with defense counsel and the prospective jurors:

> MR. THOMPSON [defense counsel]: You know, the State at some point said might just give you a ton of evidence, more and more, we're stacking it up and we're stacking it up and we're stacking it up. This is not a contest decided by weight or height or volume.
>   Does anyone think that a lot of evidence means they got to be guilty? Twenty pieces of evidence that you say, wow, that's pretty strong evidence against him. One piece where you say I now have a doubt and I think it's reasonable.
> &ast;   &ast;   &ast;   &ast;   &ast;
> Q. How about you, ma'am, how would you vote in that case?
> A. (ANDRE [sic] BROWN) Guilty. Guilty.
> Q. You would vote guilty?
> A. Mhm.
> Q. How about you, ma'am?

A. (MARIE RAMAGOS) I'd vote guilty.

Of the other prospective jurors asked this hypothetical about twenty pieces of evidence, two said they would vote guilty, three said they would vote not guilty, and three said they were undecided.

Defense counsel then asked a burden of proof hypothetical where one of the elements of the crime was not proven. When a prospective juror asked defense counsel to reask the question, the following exchange took place:

> MR. THOMPSON: Let's say there is four elements to the crime. And it's a little girl that was -- the allegation is that someone molested her. And they prove three of the elements and there is a lot of evidence but they don't prove the fourth element.
> Are you going to vote guilty anyway? Is anybody going to vote guilty anyway?
> I already told you I probably would. You probably would too, ma'am?
> A. (UNIDENTIFIED JUROR) Mhm.
> MR. THOMPSON: Some of your [sic] would?
> A. (MULTIPLE JURORS) Mhm.

During a subsequent bench conference, defense counsel challenged Brown and Ramagos because they said even if they had reasonable doubt, they would still vote guilty. One of the prosecutors replied that defense counsel was paraphrasing and that the questioning and answering did not unfold the way defense counsel had suggested. The trial court and two of the prosecutors expressed concern that defense counsel's hypothetical about the twenty pieces of evidence was confusing. Having reviewed the record, we agree there was much confusion in this particular hypothetical. The trial court in particular stated:

> So I think the -- I don't think the -- I know what you were trying to say and I think that -- I didn't like the way that it was laid out because I think it should, again, when weighing all of the evidence, if that one gave you a reasonable doubt, how would you vote.

The defendant in brief asserts that Brown and Ramagos were never rehabilitated because there was no further inquiry to clarify the questions asked by defense counsel. This assertion is incorrect. Following the bench conference, the

trial court specifically addressed Brown and Ramagos about the burden of proof and whether or not they could apply the law. In fact, before addressing Brown and Ramagos, the trial court informed the State and defense counsel it would stay within the confines of the pieces-of-evidence hypothetical:[2]

> I would -- the way I would attempt to clear it up would be to say, I'll tell them, I'm going to start -- I'm going to follow off of Mr. Thompson's hypothet, where you have twenty-one pieces of evidence and you have to weigh that evidence. And what I need to know from you is if any one of those twenty pieces creates a reasonable doubt in your mind as to the guilt of the defendant, would you be able to follow the law and vote not guilty?

Thus, in the trial court's follow-up questions to four prospective jurors, including Brown and Ramagos, the following colloquy took place:

> I'm going to follow up on Mr. Thompson's hypothet just a little bit to make sure that everyone is clear. And it's easier just to start with his instead of starting a new one.
>
> One of the instructions that you'll be given if you're selected as a juror is the evidence is to be weighed and not counted. So whether there is a hundred and fifty pieces presented or three pieces presented, the weight and the importance of the evidence is you're looking at during your deliberations.
>
> With that in mind, I think Mr. Thompson said twenty good pieces of evidence, one piece of evidence that you had a reasonable doubt about. I'm going to start with Ms. Ramagos.
>
> []
> Q. If you weigh those all twenty-one pieces and after taking each of them into consideration and listening to your fellow jurors, at the end, if you say I have a reasonable doubt, that one piece of evidence is creating a doubt in my mind as to an element that needs to be proven by the State, are you going to be able to vote not guilty on that?
>
> *       *       *       *       *
>
> A. (MARIE RAMAGOS) I would have to hear the evidence. And if it was a true, solid reasonable doubt, I'd have to vote not guilty.
>
> *       *       *       *       *
>
> Q. I'm going to instruct you that if you -- you have to find -- you have to find Mr. Hamburg guilty of each element. You have to find that he's -- each element of the crime required by the State to be

---

[2] The defendant in brief asserts Brown and Ramagos also said they would still vote guilty if, under defense counsel's second hypothetical, the State failed to prove an element of the crime. This assertion, however, is not established by the record. When defense counsel asked the hypothetical about an element not being proved, the only answers provided in the record were "(UNIDENTIFIED JUROR) Mhm" and "(MULTIPLE JURORS) Mhm." It was not clear who answered or what these answers meant. Moreover, apparently for the sake of completeness, the trial court, in its rehabilitation, asked Brown and Ramagos again about the missing-element hypothetical.

proven beyond a reasonable doubt to find him guilty. So I'm telling you to place yourself in the jury room where you believe, after weighing all of the evidence that you've heard, you believe there is reasonable doubt, beyond a reasonable -- they did not reach the standard of beyond a reasonable doubt, would you be able to vote not guilty?

       \*       \*       \*       \*       \*

Q. And Ms. Brown?

A. (ANDREA BROWN) Not guilty.

Q. You would be able to vote not guilty without -- if you felt that there was doubt beyond a reasonable doubt?

A. Yes.

       \*       \*       \*       \*       \*

Q. So this is -- this is one crime. So one crime can have multiple elements that you have to prove. So on that one crime, they don't -- they don't prove one, two, three, and four. They proved one to you, they proved three, they proved four. They didn't tell you anything about two, nothing. Are you able to vote not guilty?

A. If the number two is strong enough to --

Q. No, no, no, listen to me. Number two is a required element of the crime. There is four things that have to be proven and they do not do it. Are you able to vote not guilty?

A. Yeah, I guess I could vote not guilty if they didn't and it was required.

Q. If they didn't and it was required, you could vote not guilty?

A. Yeah.

Q. Ms. Ramagos?

A. (MARIE RAMAGOS) I'd vote not guilty.

Q. And Ms. Brown?

A. (ANDREA BROWN) Not guilty.

THE COURT: Is there anyone here that still has a question about weighing the evidence and the standards or the burden that the State would have to meet; or anyone here who feels like they could not follow that law? And I believe it will become more clear as you receive the rest of your instructions.

REPORTER'S NOTES: No verbal response.

The trial court denied the challenges for cause for Brown and Ramagos. Based on the foregoing colloquy, we find no reason to disturb the ruling of the trial court in denying the cause challenges. The reviewing court should accord great deference to the trial judge's determination and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification. **State v. Miller,** 99-0192 (La. 9/6/00), 776 So.2d 396, 405-06, cert. denied, 531

8

U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001); see also **State v. Dotson,** 2016-0473 (La. 10/18/17), 234 So.3d 34, 45.

Both Brown and Ramagos indicated that they understood reasonable doubt and that they could follow the law. A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse a potential juror on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. See **State v. Kang,** 2002-2812 (La. 10/21/03), 859 So.2d 649, 653; **State v. Lee,** 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that his sentence is excessive. Specifically, the defendant contends that all three offenses arose out of the same facts and circumstances and that the trial court failed to justify why it ran count three consecutively.

A thorough review of the record indicates the defendant did not make or file a written motion to reconsider sentence based on any specific ground following the trial court's imposition of the sentence. Under La. C.Cr.P. arts. 881.1E and 881.2A(1), the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See **State v. Mims,** 619 So.2d 1059 (La. 1993) (*per curiam*). The defendant, therefore, is procedurally barred from having the assignment of error reviewed because of his failure to file a motion to reconsider sentence after being sentenced. See **State v. Duncan,** 94-1563 (La. App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (*en banc per curiam*). This assignment of error is without merit.

## REVIEW FOR ERROR

Pursuant to La. C.Cr.P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found a sentencing error. Upon conviction for being a convicted felon in possession of a firearm, La. R.S. 14:95.1B mandates imposition of a fine of not less than $1,000.00 nor more than $5,000.00. The trial court did not impose a fine. Although the failure to impose a fine is error under La. C.Cr.P. art. 920(2), it is not inherently prejudicial to the defendant. Because the trial court's failure to impose a fine was not raised by the State, we are not required to take any action. As such, we decline to correct the illegally lenient sentence imposed on count three. See **State v. Harrison**, 2017-1566 (La. App. 1st Cir. 5/1/18), 2018 WL 2041414, *4 (unpublished), writ denied, 2018-1110 (La. 3/6/19), 266 So.3d 896; **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277.

## CONVICTIONS AND SENTENCES AFFIRMED.