WHIPPLE, J.
|¡,The defendant, William Brown, was charged by grand jury indictment with one count of first degree murder, a violation of LSA-R.S. 14:30, and pled not guilty. Pri- or to the commencement of trial, the charge was amended to one count of second degree murder, a violation of LSA-R.S. 14:30.1, and the defendant pled not guilty to the amended charge. Following a jury trial, he was found guilty as charged by a unanimous verdict. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. He now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS

On January 1, 2003, the victim, Richard Joseph Lodrigue, was shot to death outside the home he shared with his fiancée and daughter in Ashland North in Terre-bonne Parish. He suffered multiple gunshot wounds to his chest.[1] The victim’s *213 neighbor, Joshua Day, was also shot during the incident.
The victim’s pregnant fiancée, Jessica Sue Plaisance, was standing next to him during the shooting and gave the following account of the incident. On December 31, 2002, at approximately 11:00 p.m., the victim was outside of his house with two of his nephews, Plaisance, Day, and Day’s girlfriend, Rebecca Parfait, shooting off fireworks when at least five men walked past the house. The victim knew some of the men, shook hands with them, and the men continued on without incident. Day then told the victim that the men had “jumped [Day]” a week | .¡earlier.
Shortly thereafter, the men returned with approximately six other men and began slowly walking toward the victim and the other people standing outside with him. All of the men, with the exception of the defendant, stopped short of reaching the victim. The defendant approached the victim and Day and questioned them concerning which of them had stated that the group of men had “jumped y’all[.]” The victim told the defendant, “Look, we don’t want no trouble. We got kids out here. Y’all just go.”
The defendant responded to the victim’s comments by running to him and shooting him in the chest at least three times. After shooting the victim, the defendant continued firing, striking Day and a parked vehicle. The defendant and the other men then fled from the scene. Thirteen shell casings were subsequently recovered from the scene.
Parfait also testified at trial. She saw the defendant pointing a gun at the victim and Day as he questioned them concerning who had claimed to have been “jumped[.]” She then backed away and heard gunshots.
Jermaine Timothy Verdin also testified at trial. He indicated there was animosity in the neighborhood between the men from Ashland and those from Dulac and that, approximately two months prior to the incident, he and six to eight other men had beaten up Day. On the night of the incident, but prior to the shooting, Verdin and his cousin, Ray Verdin, had gone to the defendant’s trailer, where he saw the defendant’s brother, David “Peaches” Theri-ot, Jamar “Old School” Williams, Lionel “Nig” Lewis,[2] Shawn “Twerk” “Turk” Allen, Jerome “Buff’ Scott, LJoshua “Rash Meat” Mosely, Derrick “Dog Man” “D-Love” Robinson, and Richard Nelson. Outside the trailer, the defendant was shooting a .22 caliber pistol at the ground and in the air. Inside the trailer, the other young men were talking and playing video games. At some point, Allen left to go to his house. When he returned, he told the men at the trailer that there were some “Dulac boys” down the street shooting off firecrackers and “talking -.” Everyone at the trailer then left to go fight with the “Dulac boys”-r-the victim and Day.
After the group of men arrived at the victim’s house, the victim recognized Jermaine, Ray Verdin and Robinson and greeted them. Theriot stated, “[M]an, they ain’t about-[,]” and the group of men left without incident. After the group of men arrived back at the trailer, the defendant left. He returned, however, claiming that the victim and Day had tried to “jump” him. The defendant and all of the men from the trailer then went back to the victim’s house.
The defendant and Theriot got closer to the victim and Day than the other men. The victim asked the defendant and the group of men why they had to come to his house and mess up his New Year’s cele *214 bration. The victim stated he was just trying to have fun with his kids. Day said that the group of men was the same group that had previously “jumped” him. A “little argument” started between the victim and the defendant, and the defendant pulled out the gun he had fired at the trailer previously. Jermaine Verdin did not see anyone else with a gun. The victim asked the defendant why he had to use a gun; why could he not fight with his hands. According to Verdin, the defendant pointed the gun at the victim’s “face, and stuff[ ]” and fired at least five times. Jermaine Verdin then ran away.
IsWhen questioned by the police following the shooting, the defendant denied shooting anyone and claimed he was not present at the scene at the time of the shooting.
At trial, the defense argued there was a close resemblance between Theriot and the defendant, and the witnesses who claimed to have seen the defendant shoot the victim had mistaken the defendant for his brother, Theriot.

CHALLENGES FOR CAUSE

In assignment of error number 1, the defendant contends the trial court erred in denying the defense challenges for cause. Specifically, he argues the court erred in its denial of challenges for cause against prospective jurors Theophile A. Torres, Jr., Ira L. Davis, Michael R. Adams, Sandra Ann Scott, and Sophia A. Seymore. He argues that these prospective jurors indicated they would believe the testimony of a police officer over a layperson and were never rehabilitated.
Louisiana Code of Criminal Procedure art. 797, in pertinent part, provides:
The state or the defendant may challenge a juror for cause on the ground that:
[[Image here]]
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
[[Image here]]
(4) The juror will not accept the law as given to him by the court; or ....
A trial court’s ruling on a motion to strike jurors for cause is afforded broad discretion because of the court’s ability to get a first person impression of prospective jurors during voir dire. State v. Kang, 2002-2812, p. 6 (La.10/21/03), 859 So.2d 649, 653-54.
However, prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. This is because an erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. Therefore, to prove there has been an error warranting reversal of a conviction and sentence, a defendant need only show: (1) the trial court’s erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. Kang, 2002-2812 at p. 3, 859 So.2d at 651-52.
Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror. However, a mere relationship between a prospective juror and a law enforcement officer is not of itself grounds to strike the juror for cause. Additionally, a *215 prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge’s refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. But, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render a judgment according to law may be reasonably implied. Kang, 2002-2812 at pp. 4-5, 859 So.2d at 652-53.
During the voir dire examination of the first panel of prospective jurors, Torres indicated that, if everything else was equal, he would believe a policeman more than a layperson due to his respect for the uniform. Seymore indicated she |7was friends with at least three sheriffs deputies. She indicated that, under the circumstances referenced by Torres, if a Terre-bonne Parish Sheriffs Deputy testified, she would believe him. Defense counsel asked the other members of Panel # 1 if any of them felt the same way as Torres and Seymore. Davis, Scott, and Adams all answered affirmatively.
The court stated it “need[ed] to figure something out” with Torres, Scott, Adams, and Davis. The court asked Scott, if a police officer with fifteen years experience as a police officer came before her, would the fact of his experience possibly influence her to believe him over someone else who did not have so much experience. Scott answered, “Maybe at first, until I hear the whole case,” but that she would then decide from there. Scott initially indicated that part of the reason why she would believe a police officer was because he may have training that would make him more observant to a particular crime. The court asked Scott, if a police officer testified he went to school to learn how to test people for driving while intoxicated by performing a test with their eyes, or making them walk a certain kind of line, or performing some kind of chemical test, would that fact be one reason why she might believe him over someone else. Scott answered, “I think so.” Thereafter, Davis, Torres, Scott and Adams indicated they agreed with what the court had said.
However, the court then offered another scenario. The court asked Torres, Scott, Adams, and Davis to imagine a policeman with two days experience testifying that although his radar gun was broken, he thought he could judge how fast people were going, and he thought two truck drivers were driving over the speed limit. The court then asked the referenced prospective jurors to imagine that the truck drivers, a husband and wife, testified that they had been driving for |stwenty years, had never had a ticket, and knew they were going 55 miles per hour. Davis indicated, in the court’s scenario, he would probably believe the truck driver. Scott, Adams, and Torres all indicated they would believe the truck driver in the court’s scenario.
The court further asked Davis, was he saying he would believe a policeman over a layperson just because of the uniform. Davis replied negatively, and added “it would depend on the circumstances and if all things were equal[,]” but indicated that was “not the total case.” When asked to elaborate on what he meant by “all things were equal[,]” Davis indicated he had respect for authority. He added, if the court was asking him whom he would believe, then “there wouldn’t be any difference.”
Defense counsel challenged Torres, Davis, Adams, Scott, and Seymore for cause arguing Torres and Davis had stated they would believe a policeman more than *216 a layperson and the other referenced prospective jurors had agreed. The court denied the challenges, and the defense subsequently exhausted all of its peremptory challenges.
There was no error in the denial of the challenges for cause. Torres’s answer that he would believe a policeman more than a layperson out of respect for the uniform was conditioned by his statement, “if everything was equal[.]” He elaborated on his answer by stating he would believe the policeman over a lay witness if the policeman and the lay witness had the exact same story under the exact same circumstances. Thus, neither Torres nor the other prospective jurors who agreed with his answer, including Seymore, were incompetent to serve as jurors who would unquestionably credit the testimony of law enforcement officers over that of defense witnesses. Indeed, when Davis was asked to elaborate on |3what he meant by “all things were equal[,]” he indicated he had respect for authority. He added, if the court was asking him whom he would believe, then “there wouldn’t be any difference.”
Moreover, in regard to Torres, Davis, Adams, and Scott, even if their initial responses indicated they were not impartial, they were rehabilitated following the additional questioning by the trial court. See Kang, 2002-2812 at p. 7, 859 So.2d at 654 (no abuse of discretion in denying challenge for cause against prospective juror where review of entire voir dire indicated juror would give more weight to testimony of deputies on the basis of their training).
This assignment of error is without merit.

DENIAL OF MOTION TO PROFFER

In assignment of error number 2, the defendant contends the trial court erred in denying the defense motion to proffer testimony. He references the voir dire transcript from the case of State of Louisiana versus Jerome Ayro, Thirty-second Judicial District Court docket # 406,814. The defendant claims he wanted to proffer the Ayro voir dire transcript to establish that some of the same prospective jurors at issue herein had been dismissed for cause two days earlier in the Ayro trial. The State argues the trial court accepted the proffer and the transcript of voir dire is in the record. The State is correct.
This assignment of error likewise is without merit.
CONVICTION AND SENTENCE AFFIRMED.
WELCH, J., concurs without reasons.

. Deputy Coroner Dr. Charles Ledoux, who performed the autopsy on the victim, testified that an examination of the victim's body revealed entrance wounds left of his left nipple, right of his midline incision, and in his left shoulder, but added that the entrance wounds were obscured by surgical incisions.

. Ray Verdin testified that Lewis was also the defendant’s brother.