## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA

### COURT OF APPEAL

### FIRST CIRCUIT

### 2020 KA 0062

### STATE OF LOUISIANA

### VERSUS

### BRUCE LOCKWOOD CHAPPELLE

Judgment Rendered: **NOV 0 9 2020**

\* \* \* \* \* \* \*

On Appeal from the 32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No. 769327

Honorable David W. Arceneaux, Judge Presiding

\* \* \* \* \* \* \*

Joseph L. Waitz, Jr.
District Attorney
Ellen Daigle Doskey
Assistant District Attorney
Houma, Louisiana

Attorneys for Appellee,
State of Louisiana

Bertha M. Hillman
Covington, Louisiana

Attorney for Defendant/Appellant,
Bruce Lockwood Chappelle

\* \* \* \* \* \* \*

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

Holdridge J. , concurs & assigns reasons.

**PENZATO, J.**

The defendant, Bruce Lockwood Chappelle, was charged by an amended bill of information with theft at a value of twenty-five thousand dollars or more, a violation of La. R.S. 14:67(B)(1). He pled not guilty. After a trial by jury, he was found guilty as charged. The trial court denied the defendant's motions for post-verdict judgment of acquittal and new trial. The State filed a habitual offender bill of information, and the defendant was subsequently adjudicated a third-felony habitual offender pursuant to La. R.S. 15:529.1(A)(3)(a). The trial court sentenced the defendant to one hundred sixty months imprisonment at hard labor. The defendant now appeals, assigning as error the trial court's denial of his challenge for cause of a prospective juror during voir dire. For the following reasons, we affirm the conviction and sentence.

### STATEMENT OF FACTS

On June 17, 2017, Ron Weimer, the general manager of Geri Lynn Nissan in Houma, Louisiana, reviewed surveillance footage after realizing that a white 2017 Nissan Altima was missing from the lot. The surveillance footage showed the vehicle being driven off of the lot around 6:30 a.m., five days earlier, on June 12, 2017. Detective Lieutenant Billy Dupre, Jr. of the Terrebonne Parish Sheriff's Office (TPSO) was assigned to investigate the theft. In addition to providing Detective Dupre with a video clip of the surveillance footage that he recorded with his cell phone, Mr. Weimer informed Detective Dupre that the stolen vehicle was equipped with a GPS tracking system. Detective Dupre used the tracking system to locate the vehicle at 321 Turtle Creek Road in St. Rose, Louisiana. After obtaining confirmation of the vehicle's whereabouts from the St. Charles Parish Sheriff's Office, Detective Dupre and Lieutenant Wilton Leon (also with the TPSO) went to the location and found the vehicle parked in the driveway of a residence.

2

While at the residence, Detective Dupre questioned potential witnesses, including Brenda Thomas, who indicated that her friend Bruce Chappelle (the defendant) told her to go pick up his vehicle from a Valero gas station in Hammond and bring it to the residence in St. Rose.[1] After Ms. Thomas went to the defendant's house to get the keys, her daughter gave her a ride to the gas station in Hammond, where she was able to locate the vehicle. She then drove the vehicle to her brother's residence in St. Rose, as requested by the defendant. Detective Dupre obtained still photographs taken from video surveillance footage from June 13, 2017, that showed a subject who fit the body build and description of the defendant at the Valero gas station with the vehicle at issue. Detective Dupre subsequently interviewed the defendant at the sheriff's office. After being advised of his *Miranda*[2] rights, the defendant confessed to taking the vehicle and leaving it at the gas station where it was retrieved by Ms. Thomas.

**ASSIGNMENT OF ERROR**

In his sole assignment of error, the defendant argues that the trial court erred in denying his challenge for cause to excuse Kathleen Luke, a prospective juror on panel one of the jury venire. The defendant notes that Ms. Luke is the wife of an assistant district attorney working in the same office as the prosecuting attorney in the instant case. The defendant further contends that Ms. Luke also had a "friendship" with Geri LeBlanc of Geri Lynn Nissan. The defendant argues that it is unrealistic to conclude that Ms. Luke's relationships with her husband and Geri LeBlanc would not affect her during deliberations. The defendant notes that Ms. Luke indicated that she would "like to say" that her mind would not be swayed but

---

[1] Prior to the theft, Ms. Thomas went with the defendant when he looked at and test-drove vehicles at Geri Lynn Nissan, including the vehicle at issue. Ms. Thomas testified that when she subsequently went to pick up the vehicle at issue from the Hammond gas station, she did not recognize it as being the vehicle from Geri Lynn Nissan. She stated that she believed the defendant owned the vehicle at issue.

[2] *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

3

did not outright deny that she would be swayed by her husband's position. Finally, the defendant contends that Ms. Luke may have been reluctant to admit to the trial court judge, who was her next-door neighbor,[3] that she could not be fair and impartial in his courtroom. The defendant concludes that Ms. Luke's responses as a whole during voir dire revealed facts for which bias, prejudice, or inability to render judgment according to the law can be reasonably implied.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A); La. Code Crim. P. art. 786. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. *State v. Mills*, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 486, writs denied, 2014-2027 (La. 5/22/15), 170 So.3d 982 & 2014-2269 (La. 9/18/15), 178 So.3d 139. Louisiana Code of Criminal Procedure article 797(2) provides that a prospective juror may be challenged for cause on the ground that the juror is not impartial, whatever the cause of his partiality. Further, the State or the defendant may challenge a juror for cause on the ground that the relationship, whether by blood, marriage, employment, friendship, or enmity, between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict. La. Code Crim. P. art. 797(3). When addressing whether a challenge for cause should be granted, the district court judge must look at the juror's responses during his or her entire testimony, not just isolated answers. *State v. Sparks*, 88-0017 (La. 5/11/11), 68 So.3d 435, 461, cert. denied, 566 U.S. 908, 132

---

[3] As indicated, Ms. Luke disclosed that the trial judge was her next-door-neighbor. She denied that this would cause her any bias in any manner in this case. Ms. Luke was not questioned any further in regards to living next door to the trial judge, nor does the defendant assert this as a source of bias on appeal.

4

S.Ct. 1794, 182 L.Ed.2d 621 (2012); *State v. Conklin*, 2018-0718 (La. App. 1st Cir. 2/28/19), 274 So.3d 675, 684, writ denied, 2019-00665 (La. 10/8/19), 280 So.3d 591.

When a juror expresses a predisposition as to the outcome of a trial, a challenge for cause should be granted. However, if after further inquiry or instruction, the prospective juror exhibits the ability and willingness to make an impartial decision based on the law and evidence presented at trial, the challenge is properly denied. See *State v. Mischler*, 2018-1352 (La. App. 1st Cir. 5/31/19), ___ So.3d ___, 2019 WL 2334219, at *14. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. *State v. Bowie*, 2017-1762 (La. App. 1st Cir. 6/1/18), 2018 WL 2453480, at *6, writ denied, 2018-1099 (La. 1/8/19), 260 So.3d 1214. When a defendant is forced to utilize a peremptory challenge to correct an error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected. *State v. Mickelson*, 2012-2539 (La. 9/3/14), 149 So.3d 178, 184-85. In such cases, a defendant need make only two showings to establish error warranting reversal of a conviction and sentence: (1) the district court erred in refusing to sustain a challenge for cause by the defendant; and (2) the defendant exhausted all of his peremptory challenges. *Id.* at 185.

Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant has exhausted his peremptory challenges. *Bowie*, 2018 WL 2453480, at *6. However, a trial court is afforded broad discretion in determining whether to strike a juror for cause because of the trial court's ability to form a first-person impression of prospective jurors during voir dire. *State v. Brown*,

2005-1676 (La. App. 1st Cir. 5/5/06), 935 So.2d 211, 214, writ denied, 2006-1586 (La. 1/8/07), 948 So.2d 121. The trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning, whereas the reviewing court reviews the matter only on a transcript in a record. *State v. Dorsey*, 2010-0216 (La. 9/7/11), 74 So.3d 603, 627, cert. denied, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. *State v. Folse*, 2018-0153 (La. App. 1st Cir. 9/21/18), 258 So.3d 188, 197, writ denied, 2018-1743 (La. 4/22/19), 268 So.3d 300.

In this case, the defendant exhausted all six of his peremptory challenges and used one of them to remove Ms. Luke.[4] Therefore, we need only determine whether the trial court erred or abused its discretion in denying the defendant's challenge for cause of Ms. Luke. At the outset, we note that as the defendant did not assert Ms. Luke's association with Geri LeBlanc as a basis for his challenge for cause below, he is precluded from making such an assertion on appeal. The nature of an objection to a ruling refusing to sustain a challenge for cause and grounds therefor shall be stated at the time of objection. La. Code Crim. P. arts. 800(A) & 841(A). Further, a new basis for an objection cannot be raised for the first time on appeal. La. Code Crim. P. art. 841; *State v. Cheramie*, 2008-0703 (La. App. 1st Cir. 9/12/08), 2008 WL 4190665, at *2, writ denied, 2008-2547 (La. 8/12/09), 17 So.3d 375.

Moreover, Ms. Luke did not use the term friend or friendship in describing her association with Geri LeBlanc. When the assistant district attorney asked the prospective jurors on panel one if there was anything she missed asking about, a few

---

[4] In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the State twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the State six for each defendant. La. Code Crim. P. art. 799. Based on the version of the applicable statute in effect at the time of the offense, the instant offense was punishable by imprisonment with or without hard labor. See La. R.S. 14:67(B)(1) (prior to amendment by 2017 La. Acts, No. 281, § 1). Thus, the defendant was entitled to six peremptory challenges in selecting the six-member jury.

of them, including Ms. Luke, stated that they knew members of the LeBlanc family.[5] Specifically, Ms. Luke stated, "I know Geri fairly well." She later explained that Geri LeBlanc was a sponsor for her basketball team when she coached at Vanderbilt High School. Ms. Luke further stated, "And I would go meet with her and talk about things other than business. Sometimes we would talk about the kids, and school, and things of that nature." Ms. Luke denied ever socializing with the LeBlancs and further denied that her association or dealings with Geri LeBlanc would cause her to automatically find the defendant guilty. She also confirmed that she would be fair and impartial. The defense attorney did not further question Ms. Luke regarding her association with Geri LeBlanc. Considering the above, we are not persuaded by the defendant's attempt on appeal to assert Ms. Luke's association with Geri LeBlanc as a basis for partiality.

Ms. Luke, early on, during voir dire, upon providing her name and occupation, disclosed the status of her husband, Jay Luke, as an assistant district attorney for Terrebonne Parish. When the defense attorney questioned Ms. Luke in that regard, the following pertinent colloquy took place:

**MR. PELLEGRIN:**
Okay. And, Ms. Luke, I am going to ask you a couple of questions briefly .... You had said earlier that your husband was Mr. Jay Luke; is that correct?

**MS. LUKE:**
Yes, sir.
**MR. PELLEGRIN:**
And he works for the Terrebonne Parish District Attorney's Office, correct?

**MS. LUKE:**
Yes. He is an assistant district attorney, yes, sir.

**MR. PELLEGRIN:**
And I've worked with Mr. Luke, I'm familiar with him. So I'm sure he has come home a couple of times and kicked his shoes off and y'all have sat down and kind of talked about his work day, right?

---

[5] According to the record, at least two members of the LeBlanc family, Geri and Greg LeBlanc, owned or were affiliated with local car dealerships, including Geri Lynn Nissan.

**MS. LUKE:**
No.

**MR. PELLEGRIN:**
Y'all don't?

**MS. LUKE:**
You're told in my house we don't speak about his work or for that matter discuss that.

**MR. PELLEGRIN:**
Okay. So having Mr. Luke who works for the same office as Ms. Mustin[6] do you think that creates any kind of conflict in your mind for this type of case right here?

**MS. LUKE:**
I don't even know [her].

**MR. PELLEGRIN:**
But just the sense that they work together, does that -- having Mr. Luke work at the district attorney's office do you think that would sway your mind one way or the other in this case?

**MS. LUKE:**
I'd like to say no.

*       *       *

I'd like to think that I am going to judge the information in a non-partial way, look at things through a common-sense window.

**MR. PELLEGRIN:**
I appreciate -- I appreciate that ....

During additional questioning by the trial court, the following colloquy took place:

**THE COURT:**
Ms. Luke, let me ask you a couple of questions. There was some question about the relationship with you and your husband and the fact that he is an assistant district attorney. If you are selected for the jury in this case and after you hear all of the evidence you come to the conclusion that the defendant is not guilty, would the fact that your husband is an assistant district attorney cause you to return a verdict of guilty instead?

**MS. LUKE:**
No, sir.

**THE COURT:**

---

[6] Ms. Mustin was the assistant district attorney who prosecuted this case.

Would the fact that your husband is an assistant district attorney influence you in [any way] on any decision you might have to make as a juror in this case?

**MS. LUKE:**
No, sir.

**THE COURT:**
If you are selected for this jury and the jury finds the defendant not guilty would that cause you any discomfort, embarrassment or difficulty with your husband?

**MS. LUKE:**
No, sir.

**THE COURT:**
Would you let it cause you any difficulty, embarrassment or difficulty with your husband?

**MS. LUKE:**
No, sir.

**THE COURT:**
All right. Do you think if you are selected as a juror in this case you could make a decision based on the evidence presented and without regard to the fact that your husband is an assistant district attorney?

**MS. LUKE:**
Yes, sir.

In challenging Ms. Luke for cause, the defense attorney only noted her relationship with an assistant district attorney in the same parish of the instant case, but he conceded that she further stated that she would like to think that she could be fair and impartial in this case. As the defendant now argues on appeal, the defense attorney argued that "I would like to think so" was not a satisfactory response. In opposing the challenge for cause, the assistant district attorney, Amanda Mustin, noted that Mr. Luke was not involved in the instant case. Ms. Mustin further stated that, to her knowledge, Mr. Luke had no knowledge of the instant case. Ms. Mustin argued that Ms. Luke made it abundantly clear that she was capable of remaining unbiased in this matter. In denying the challenge for cause, the trial court stated in part, "Ms. Luke is a high school basketball coach and if there is one thing that is abundantly clear from the questioning of Ms. Luke is that she is a very decisive

person. There is no meekness, or shyness, or hesitation by her in response to the questions that she was asked." After acknowledging the language of La. Code Crim. P. art. 797(3), the trial court reiterated that Ms. Luke made it very clear that her marriage would not present a problem for her. The defense attorney generally objected to the trial court's denial of the challenge for cause.

The law in Louisiana is clear that a relationship between a prospective juror and a district attorney does not automatically disqualify the prospective juror from service. *State v. Juniors*, 2003-2425 (La. 6/29/05), 915 So.2d 291, 306, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). The existence of a relationship, even one by blood or marriage, is not sufficient to disqualify a juror unless the facts reveal that the nature of the relationship is such that it is reasonable to conclude it would influence the juror in arriving at a verdict. La. Code Crim. P. art. 797(3). The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel. It requires that jurors be fair and unbiased. *Juniors*, 915 So.2d at 306. Thus, the mere existence of a relationship is not alone grounds for a challenge for cause. Rather, the question presented is whether the prospective juror could assess the credibility of each witness independent of his relationship with an assistant district attorney. *Bowie*, 2018 WL 2453480, at *7.

We find that the trial court's denial of the challenge for cause at issue, based on its observation of Ms. Luke during voir dire, was within its great discretion. The trial court was in a superior position to observe her as a prospective juror. Additionally, the voir dire record in this case as a whole supports the trial court's finding that Ms. Luke could be fair and impartial. Accordingly, we find no merit in the sole assignment of error.

**CONVICTION AND SENTENCE AFFIRMED.**

10

| STATE OF LOUISIANA | STATE OF LOUISIANA |
|---|---|
| VERSUS | COURT OF APPEAL |
| BRUCE LOCKWOOD CHAPPELLE | FIRST CIRCUIT |
| | NO. 2020 KA 0062 |

 **HOLDRIDGE, J., Concurring**

I respectfully concur in the result. At issue is whether a prospective juror, who is married to an assistant district attorney who works in the same office as the prosecuting assistant district attorney, should be dismissed as a prospective juror for cause. In this case, the answers elicited from the juror in voir dire examination indicate that the prospective juror stated that "I'd like to think that I am going to judge the information in a non-partial way." Similarly, upon rehabilitation questions by the trial judge, the juror indicated that her relationship with her husband, who was an assistant district attorney, would not influence her in any way. From these answers, it was within the "great discretion" of the trial judge to deny the cause challenge as to this juror. However, in the administration of justice in a fair and equitable criminal system, it would appear that the better practice would have been to remove the questioned juror for cause. Under both the criminal (La. C.Cr.P. art 797) and civil (La. C.C.P. art. 1765) articles dealing with challenges for cause, the relationship by marriage between a prospective juror and an attorney employed by the district attorney (or an attorney in the same firm that is representing a party in a civil action), the question is whether a reasonable person would conclude (or believe) that the relationship would influence that juror in arriving at a verdict. Clearly, the reasonable perception in a criminal case is that the spouse of an assistant district attorney would be influenced and would not be a proper juror to serve on a criminal jury.